Casper, Appellant, *v.* American Guarantee and Liability Insurance Company.

Argued April 27, 1962.   Before BELL, C. J., JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Samuel I. Sacks,* with him *Lee B. Sacks,* for appellant.

*Louis S. Cali,* with him *Cogan and Turner,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 25, 1962:

Appellant is a brickwork contractor who, as a subcontractor, participated in certain remodeling of the ground floor and basement of a building in Philadelphia. The second floor of the building was occupied by a clothing merchant, Engel, Inc., which continued its operations during the remodeling. Engel brought suit in trespass against the prime contractor and the subcontractors involved in the remodeling, including appellant, alleging negligent damage to its premises and goods.

During the period when appellant was on the remodeling job, he was insured by appellee under a comprehensive general liability policy. Upon being sued by Engel, appellant forwarded the complaint to appellee, which denied coverage and refused to defend. Appellant engaged counsel and the matter came to trial, resulting, after $3\frac{1}{2}$ weeks of trial, in a jury disagreement. Subsequently, the parties compromised their differences and appellant paid to Engel, as his share of the settlement, $600. To recover this sum, as well as $7,500 in legal fees for defense of Engel's action against

him, appellant sued appellee in assumpsit, alleging a breach by appellee of its duty to defend the action brought by Engel against appellant.

Appellee filed an answer and new matter which, in essence, denied any duty to defend, inasmuch as the Engel claim was allegedly without the coverage of the policy. Appellant's reply to new matter denied that the claim was beyond the purview of the policy and appellee moved for judgment on the pleadings. The court below granted judgment on the pleadings in favor of appellee and that judgment is the subject of the instant appeal.

The insurance policy which forms the basis of this litigation, contains the following relevant provisions: "1. . . . Coverage B—Property Damage Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including loss of use thereof, *caused by accident*." (Emphasis supplied).

"II. Defense, Settlement, Supplementary Payments —*With respect to such insurance as is afforded by* this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; . . ." (Emphasis supplied).

The gravamen of appellant's cause of action is that appellee wrongfully refused to defend the action brought against him by Engel. We must determine whether appellee was under a contractual duty to defend the action and, in making this determination, we are guided by the law enunciated in *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 589, 152 A. 2d 484 (1959). "It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend

at the outset of the controversy is a decision it makes at its own peril. See University Club v. American Mutual Liability Insurance Company, 124 Pa. Superior Ct. 480, 189 Atl. 534. In the leading case of Lee v. Aetna Casualty & Surety Company, 178 F. 2d 750 (C.A. 2, 1949) an insured brought suit on a policy of liability insurance. The complaint was in two counts, the first seeking relief for a judgment which plaintiff was forced to pay to an injured party and the second seeking his costs in defending that suit. The United States Court of Appeals for the Second Circuit, speaking through Judge LEARNED HAND, held that the insurer was not obligated to pay the amount of the judgment recovered against the insured as the recovery was not one within the coverage of the policy. However, the Court went on to grant the insured his costs of defending that suit. The insurance policy in that case, as in this one, required the insurance company to defend only those claims covered by the policy. The court said, that so long as the complaint filed by the injured party covered an injury which 'might or might not' fall within the coverage of the policy the insurance company was obliged to defend. In the course of the opinion they said: '. . . the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence. When, however, as here, *the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it.*' "

We agree with the analysis and reasoning of the court below, which in its able opinion stated: "As here-

tofore set out, defendant has obligated itself to indemnify plaintiff against certain damages resulting from accident. The ultimate question to be decided, therefore, is whether Engel, in its original suit against Casper, pleaded any facts alleging injury to itself, at the hands of Casper, caused by accident.

"The definition of the term accident is set forth in M. Schnoll & Son, Inc. v. Standard Accident Insurance Company, 190 Pa. Superior Ct. 360 (1959). The particular coverage clause there under consideration was couched in the following language: 'To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident* and arising out of any of the hazards hereinafter defined with respect to which insurance is afforded as provided in the declarations'. (Emphasis ours.)

"There plaintiff brought suit against his insurer under a contractor's liability policy, alleging that during the course of painting wooden gables on a large number of houses in a building development 'paint was accidentally splashed whereby plaintiff was caused to repaint' the shingle siding on some 52 houses. In denying plaintiff recovery the Superior Court states, on page 362: 'The word "accident" is not defined in the policy, and the term must therefore be interpreted in its usual, ordinary and popular sense. "Webster has defined it as 'an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency'. Many courts have quoted this definition, and some have added to or embellished it, but in reality few have improved upon it:" Lacy v. Washburn & Williams Co., 309 Pa. 574, 164 A. 724. This definition is substantially repeated in U. S. Mutual Accident Assn. v. Barry,

131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60, where it was said that an "accident" within the meaning of an insurance policy is an event "happening by chance unexpectedly taking place not according to the usual course of things or not as expected." It seems clear that an accident is the antithesis of something likely to occur, foreseeable in due course. If an occurrence is the ordinary and expected result of the performance of an operation, then it cannot be termed an accident. To constitute an accident, the occurrence must be an "unusual or unexpected result attending the operation or performance of a usual or necessary act or event:" Hey v. Guarantors' Liability Indemnity Co., 181 Pa. 220, 37 A. 402. And see Hamilton v. American Indemnity Co., 82 Pa. Superior Ct. 191.

" '. . . [page 364] While there are no Pennsylvania cases directly in point, our view is in accord with that in other jurisdictions. In Kuckenberg v. Hartford Accident and Indemnity Co., 226 F. 2d 225, plaintiff was required to do a large amount of blasting during the construction of a highway. The blasting operations caused debris to slide down upon the tracks of the Southern Pacific Railroad, causing considerable damage. Plaintiff anticipated that damage would occur and took steps to avoid the loss, including the covering of the tracks with thick layers of dirt. In denying recovery, it was held that the damage inflicted "was the reasonably anticipated, ordinary, and expected result," and was not caused by accident. In reaching this conclusion the court said: "It is true that courts construing insurance contracts have differed in judgment whether the fact that the responsible cause is an intentional act suffices in itself to preclude the resulting injury from being 'accidental' damage . . . But if, in addition to being intentional, the harmful conduct is reasonably calculated to cause substantial damage of the very sort that occurs, all courts seem to

recognize that the damage is outside of the insured risk." See also Neale Construction Co. v. U. S. Fidelity and Guaranty Co., 199 F. 2d 591; U. S. Fidelity and Guaranty Co. v. Briscoe, 205 Okla. 618, 239 P. 2d 754.' "

The Engel complaint against appellant makes the following allegations of negligence: "7. As a result of the negligence of the defendants and of each of them in the performance of the work undertaken by each of them as hereinafter set forth from on or about May, 1956 to and including on or about March, 1957, there was caused to be deposited in, on and upon the plaintiff's premises and the plaintiff's goods, wares and merchandise over the aforesaid period of time large quantities of dirt, dust, plaster, cement and other materials to the great damage of the plaintiff and its business.

"In addition, the said defendants and each of them permitted bags of cement, plaster and other materials to be piled upon and to remain as an obstruction in the Sansom Street entrance and passageway of the 1528 Chestnut Street entrance to the great damage of the plaintiff and its business.

"8. The negligence of the defendants and each of them consisted inter alia. (a) In making openings in the walls, ceilings and the work being constructed and failed to cover or otherwise protect them and the other pre-existing openings in the building such as doorways, and stairways leading to or upon the plaintiff's premises so as to cause dirt, dust and debris to be deposited through such openings upon the goods, wares and merchandise of the plaintiff. (b) In failing to properly handle the materials employed by defendants and each of them so as to prevent dirt, dust, and debris from being deposited on the goods, wares and merchandise, of the plaintiff. (c) In failing to water down or moisten the construction work in the course of demolition and/or construction so as to avoid dust,

dirt and debris from being deposited on the goods, wares and merchandise of the plaintiff."

We conclude that the acts complained of in Engel's complaint cannot be construed as alleging damages "caused by accident", the harmful conduct being " 'reasonably calculated to cause substantial damage of the very sort that occur[red]' ". Engel's claim against appellant was not potentially within the scope of the policy and appellee, therefore, was under no duty to defend.

Judgment affirmed.

Mr. Justice COHEN dissents.