**DeHaven v. Safeguard Ins. Co.**

*John J. Pentz, Jr.*, for plaintiff.
*Bernard M. Billick,* for defendant.

WILLIAMS, *P.J.,* May 19, 1975.—The instant motion for judgment on the pleadings was filed by plaintiff, Floyd J. DeHaven, in his assumpsit action against Safeguard Insurance Company, defendant, wherein he seeks to recover, with interest, the sum of $2,029.76 expended by him for counsel fees and costs in defending a trespass action, against which plaintiff asserts that defendant was obliged to defend him under the terms of a policy of liability insurance issued by defendant to plaintiff. The relevant pleadings consist of an amended complaint, an answer with new matter, and an answer (more properly, reply) to new matter. The amount of the damages is not disputed, and only the question of liability is a controverted issue.

For the purposes of this motion, the pleadings establish the following facts: On or about September 21, 1964, Richard Uhle, a minor, was riding as a passenger

in a motor bus owned and operated by William F. Deibert, Inc., in the City of Bethlehem, when a portion of the bus exploded and flew apart, propelling a fragment through the floor and rear seat of the bus and injuring Uhle. On August 3, 1966, Richard Uhle and Walter Uhle, his father, instituted civil action no. 39812 in the United States District Court for the Eastern District of Pennsylvania against William F. Deibert, Inc., to recover damages for the injury. In paragraph 6 of their complaint, the Uhles averred that the accident was due "exclusively to the negligence of defendant in the inspection and maintenance of the said motor bus." Defendant, William F. Deibert, Inc., then filed a third-party complaint against "F. J. De Haven Bus Company" averring, in paragraph 1, the description of events and statement of damages as incorporated by reference to the original complaint; averring generally in paragraph 2 that "[t]he accident referred to in plaintiffs' complaint was caused in whole or in part by the negligence of the third-party defendant, F. J. DeHaven Bus Company;" and demanding, in paragraph 4, either indemnity or contribution for all sums which might be awarded to the plaintiffs. Plaintiff in the instant action learned that the motor bus involved in the accident had been identified as a 1961, 44-passenger GMC bus no. SPA 5019 N 1177, previously owned by plaintiff and sold by him to William F. Deibert, Inc., sometime during the first week of September 1964, two to three weeks prior to the accident. This vehicle was one of ten specified in an endorsement to automobile combination policy no. 49 39 23 issued to plaintiff by defendant, Safeguard Insurance Company, for a policy period extending from 12:01 a.m. (E.S.T.) November 29, 1963 to November 29, 1964. After plaintiff was served on December 22, 1966, with the third-party complaint and the copy of the

original complaint attached thereto, he immediately took these documents to Donald Robbins, defendant's local agent. Robbins communicated with defendant and then advised plaintiff that defendant would neither insure him for the loss claimed in the action nor undertake his defense. Accordingly, plaintiff retained his own local counsel who then obtained the services of Duane, Morris & Heckscher as Philadelphia correspondent. Letters directed to "Safeguard Insurance Company, c/o Don Robbins Insurance Agency, Tannersville, Pennsylvania," and the one from local counsel dated January 31, 1967, failed to persuade defendant to take over the defense. Meanwhile, the United States District Court ordered the designation of the third-party defendant as "F. J. De Haven Bus Company" to be amended so as to read: "Floyd J. De Haven, trading as De Haven Bus Company." Eventually, the case was settled between the principal parties for $47,500 without any contribution from Floyd J. De Haven, third-party defendant there, and the plaintiff in the instant case.[1]

Plaintiff relies upon that portion of the policy, under the heading "Insuring Agreements," which reads:

"II. Defense, Settlement, Supplementary Payments

"With respect to *such insurance as is afforded by this policy* for bodily injury liability and for property damage liability, *the company shall:*

(a) defend *any suit* against the insured alleging *such injury,* sickness, disease or destruction and seek-

---

[1] In the statement of services rendered by Duane, Morris & Heckscher, attached as exhibit "B" to the original complaint, it is noted that the case was assigned for trial on the morning of May 8, 1969, before Judge Alfred E. Luongo, and that a settlement conference was held in chambers as the result of which the case was settled for $47,500 early in the afternoon of May 8th, with no contribution or payment by Mr. De Haven.

ing damages on account thereof, *even if such suit is groundless, false or fraudulent,* but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient . . ." (Emphasis supplied.)

From this language, it is apparent that defendant did not undertake, without qualification, to defend *all* suits brought against plaintiff, but only those alleging a type of claim against which the policy affords insurance. Application of the language will require two steps: (1) identification of the type of claim asserted in the third-party complaint, and (2) examination of the policy to determine whether its terms extend coverage to that specific type of claim.

As to the first step, the general rule has been stated in Keller v. Gold, 28 D. & C. 2d 275, 277 (C.P. Delaware Co. 1962), where Curran, J., said:

"The obligation of an insurance company to defend an action brought against the insured under the circumstances of this case is to be determined solely by the allegations of the complaint filed in the action: Wilson v. Maryland Casualty Company, 377 Pa. 588, 105 A. 2d 304 (1954). It is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact 'covered' under the terms of the policy: Lee v. Aetna Casualty & Surety Company, 178 F. 2d 750. So long as the complaint filed by the injured party covers an injury which may or may not fall within the coverage of the policy the insurance company is obliged to defend: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582."

In the instant case, by reference to the allegations set forth in the third-party complaint (incorporating by reference relevant allegations found in the original complaint), the type of suit may be described as a tort

claim by an innocent bystander who has sustained physical injury resulting from the mechanical malfunction of a motor vehicle in which he was travelling as a passenger which he attributes to faulty inspection and maintenance of the vehicle by the then owner and operator, and which that owner then attributes to the prior owner and operator from whom the vehicle was acquired. For a case in which an analogous claim was successfully prosecuted, see: Topelski v. Universal South Side Autos, Inc., 407 Pa. 339, 180 A. 2d 414 (1962). Where there is a *possibility* that the insurance contract covers the claim, it is the duty of the company to defend: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582, 589, 590, 152 A. 2d 484, 488 (1959); Gedeon v. State Farm Mutual Automobile Insurance Company, 410 Pa. 55, 58, 59, 188 A. 2d 320, 321, 322 (1963); Eastern Equipment Company v. Maryland Casualty Company, 38 D. & C. 2d 499 (C.P. No. 1, Phila., Co. 1965), affirmed 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966); Annotation, 50 A.L.R. 2d 458. The company is relieved of the duty to defend only where it can be demonstrated definitively that there is no coverage of the claim: Casper v. American Guarantee & Liability Company, 408 Pa. 426, 184 A. 2d 247 (1962).

Proceeding to the second step, in order to demonstrate coverage, counsel for plaintiff cites the portion of the policy, under the heading "Insuring Agreements" which reads:

"I. Coverage A. Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and *arising out of the* ownership, *maintenance* or use of the automobile." (Emphasis supplied.)

GMC Bus No. SPA 5019 N 1177 is a described automobile, one by typewritten notation appearing under item 6 of the declaration, and again by handwritten addendum to endorsement A-441 c, "Schedule of Automobiles," incorporated by reference. This endorsement contains a list of ten vehicles. The references to nos. 1 through 7 were typed; those to the remaining three, of which SPA 5019 N 1177 is no. 8, were subsequently added in handwriting. The premiums charged against no. 8 were $201.52 for bodily injury and $55.08 for property damage. Opposite the entry for no. 8 there appears, without explanation, the handwritten notation "off." One may only speculate as to whether this was made contemporaneously with the sale of no. 8 to William F. Deibert, Inc, or at some unidentified subsequent time. There is no indication of whether or not some adjustment was made in the premium charge by reason of the fact that plaintiff no longer owned no. 8 after the first week in September, 1964.

In disclaiming coverage, and therefore the duty to defend, counsel for defendant cite the portion of the policy, under the heading "Insuring Agreements," which reads:

"VIII. Policy Period, Territory, Purposes of Use

"This policy applies only to *accidents* which occur and to direct and accidental losses to the automobile which are sustained during the policy period, while the automobile is within the United States of America, its territories or possessions or Canada, or is being transported between Ports thereof and if a 'described automobile' under Insuring Agreement IV, is *owned, maintained, and used* for the purposes stated as applicable thereto in the declarations." (Emphasis supplied.)

An identical "Insuring Agreement VIII" was construed as excluding coverage of the insured first owner of a vehicle with respect to an accident which occurred

after he had sold it to a second owner in Olin Mathieson Chemical Corporation v. Southwest Casualty Company, 149 F. Supp. 600 (W.D. Ark., 1957). There, however, the accident resulted exclusively from the active negligence of the second owner's employe-driver, without any suggestion that some negligence of the first owner, perpetrated while he still had ownership and control of the vehicle, may have contributed to the happening of the accident. Here, plaintiff is charged (correctly or not) with seminal negligence in the maintenance of the motor bus during the period of his ownership and control but which did not mature into full-blown liability until after he had parted with such control; the accident happened and Richard Uhle sustained physical injury as a result thereof.

Viewing the insurance contract in its entirety, the reader is impressed with the fact that one part, including the declarations and the endorsements, is printed in easily legible type, while the other part, the test, under bold-face captions designated "Insurance Agreements," "Exclusions," and "Conditions"—is printed in 4½ point Diamond face type which the ordinary person can read only with difficulty,[2] even when aided by a magnifying glass. Item 5 of the declaration states clearly enough that:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage

---

[2] Compare: Section 617 A(4), added to the Insurance Company Law of May 17, 1921, P. L. 682, by the Act of May 25, 1951, P. L. 417, 40 PS §752, requiring that the text of policies of health and accident insurance be printed in light-faced type not less than 10 points in size. Although subsequently amended (40 PS §752), the Act of 1951 was in force when the insurance contract in the instant case was issued.

shall be as stated herein, subject to all the terms of this policy having reference thereto."

With equal clarity, endorsement A-441 c indicates, with respect to GMC Motor Bus No. SPA 5019 N 1177, that a premium of $201.52 for "BI" (bodily injury) and $55.08 for "PD" (property damage) is charged. Reference to the text will show that the overall purpose of the contract is to insure plaintiff against liability for *accidents.* Insuring agreement I (A), cited by counsel for plaintiff, qualifies that term on the basis of *derivation.* Coverage is extended only to such accidents as *arise out of* the ownership, maintenance, or use of the insured vehicle . As the reader continues through six more agreements printed in Diamond face, he arrives at insuring agreement VIII, cited by counsel for defendant, which adds a second and additional qualification, this time on the basis of *when and where* the accident happened. To be covered, the accident must happen: (1) within the duration of the policy period; (2) within the territorial limits of the United States, etc.; and (3) within the time when the vehicle is owned, maintained and used for the purposes stated in the declarations. The accident in this case meets all of the qualifications of I (A) and all of the qualifications of VIII except item (3): plaintiff did not own the bus and was neither maintaining nor using it on September 21, 1964, when the accident occurred. The clarity of the literary sense of the contract, indicating the absence of coverage for this accident, is not, however, matched by the clarity of the medium through which that sense should be conveyed to plaintiff as one of the contracting parties.

We think that construction of the instant insurance contract is controlled by a recent decision of the Pennsylvania Superior Court in Hionis v. Northern Mutual Insurance Company et al., 230 Pa. Superior Ct. 511,

516-518, 327 A. 2d 363, 365, 366 (1974), where Judge Hoffman said:

"Insurance contracts have been viewed under the law as contracts of 'adhesion', where the insurer prepares the policy for a purchaser having no bargaining power. Where a dispute arises, such contracts are construed strictly against the insurer. Eastcoast Equipment Company v. Maryland Casualty Company, 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966). In East Coast, we affirmed the decision of a court enbanc on the basis of the lower court opinion which provided in part: 'The policy behind this rule [construction against the insurer] is sound; the insurer wrote the policy, and the individual purchaser is concerned primarily with monetary benefits. Concern with definitional clauses and exclusions is minimal; therefore, if they do become material, they should be strictly construed against the insurer.' 38 Pa. D. & C. 2d at 511. When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it. Weissman v. Prashker, 405 Pa. 226, 233, 175 A. 2d 63 (1961). *Even where a policy is written in unambiguous terms,* the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him. See, e.g., Frisch v. State Farm Fire and Casualty Co., 218 Pa. Superior Ct. 211, 275 A. 2d 849 (1971); Purdy v. Commercial Union Insurance Co. of New York, 50 D. & C. 2d 230, 235 (1970).

"The plaintiff herein was a layman of apparently average intelligence whose only objective in obtaining insurance was the security of protecting the financial expenses he had incurred in furnishing, improving and bettering the leased premises. His corroborated

testimony indicates full trust in the agent's accomplishment of those purposes. The defendants opted to present no evidence. We do not believe that under the circumstances defendants could stand behind a policy limitation or exclusion without meeting the burden of proof of establishing the insured's understanding and intention to be so bound. Furthermore, when the language is read in a vacuum it is couched in technical and unclear terms; and when the disputed clause (E)(3) and its subsections are read along with the Co-Insurance Provisions in the subject policies, greater confusion as to the coverage owing a claimant for total loss is apparent. We hold, therefore, that *because defendants failed to offer any proof of the insured's awareness and understanding of the exclusions in the policies, that the policies must be construed in favor of the insured.* Evans v. Baltimore Life Insurance Co., 216 Pa. Superior Ct. 425, 268 A. 2d 155 (1970); Weissman v. Prashker, supra." (Emphasis supplied.)

In Coal Operators Casualty Co. v. Charles T. Easterby & Co., Inc., 440 Pa. 218, 221, 269 A. 2d 671, 672 (1970), it is stated:

"Preliminarily, it must be noted that to grant a motion for judgment on the pleadings a court must be confronted with a very clear case . . . Thus if there is any issue of fact unresolved, no motion for judgment on the pleadings should be granted."

Since neither side to the controversy has filed a pleading which resolves the issue of whether plaintiff had the awareness and understanding of the exclusions in the policy, as required by Hionis, there remains an unresolved issue which requires us to deny both the motion of plaintiff and the motion of defendant.

## ORDER

And now, May 19, 1975, it is ordered as follows

1. The motion for judgment on the pleadings in favor of plaintiff is dismissed.

2. The request for judgment on the pleadings in favor of defendant, incorporated in defendant's answer to the motion, is dismissed.