## DeHaven v. Selected Risks Ins. Co. (No. 1)

*John J. Pentz, Jr.,* for plaintiff.
*Brose, Pasevistillo, LaBarr & Jacobs,* for defendant.

WILLIAMS, *P. J.,* June 3, 1975.—The instant motion for summary judgment under Pa. R. C. P. 1035 was filed by plaintiff, Floyd J. DeHaven in his assumpsit action against Selected Risks Insurance Company, defendant, wherein he seeks to recover, with interest, the sum of $2,029.76 expended by him for counsel fees, costs and expenses in defending a trespass action, against which plaintiff asserts that defendant was obliged to defend him under the terms of a policy of garage liability insurance issued by defendant to plaintiff for the period extending from March 1, 1964 to March 1, 1965. The pleadings consist of a complaint and answer. In addition thereto, plaintiff has filed, pursuant to Pa. R. C. P. 4014, a request for admission of documents and facts, bringing upon the record copies of the pleadings in civil action no. 39812, United States District Court for the Eastern District of Pennsylvania, and copies of certain letters, previously omitted from the complaint, which defendant has admitted, and an affidavit in support of the instant motion for summary judgment.

For the purposes of this motion, the following facts may be regarded as established: On or about September 21, 1964, Richard Uhle, a minor, was riding as a passenger in a motor bus then owned and operated by William F. Deibert, Inc., in the city of Bethlehem, when a portion of the bus exploded and flew apart, propelling a fragment through the floor and rear seat of the bus and injuring Uhle. On August 3, 1966, Richard Uhle and Walter Uhle, his father, instituted civil action no. 39812 in the United States District Court for the Eastern District of Pennsylvania against

William F. Deibert, Inc., to recover damages for the injury. In paragraph 6 of their complaint, the Uhles averred that the accident was due "exclusively to the negligence of the defendant in the inspection and maintenance of the said motor bus." Defendant William F. Deibert, Inc, then filed a third-party complaint against "F. J. DeHaven Bus Company" averring in paragraph 1 the description of events and statement of damages as incorporated by reference to the original complaint; averring generally in paragraph 2 that "The accident referred to in plaintiffs' complaint was caused in whole or in part by the negligence of the third-party defendant, F. J. DeHaven Bus Company;" and demanding, in paragraph 4, either indemnity or contribution for all sums which might be awarded to the plaintiffs. The motor bus involved in the accident is the same one which plaintiff had sold to William F. Deibert, Inc, about the first week in September, 1964, two to three weeks prior to the accident. Shortly after December 22, 1966, when plaintiff was served with the third-party complaint, plaintiff communicated this fact to defendant. Defendant replied that it would, with reference to Garage Liability Policy No. AG 29015 issued by defendant to plaintiff, neither insure plaintiff for the loss claimed in civil action no. 39812 nor undertake plaintiff's defense therein. Accordingly, plaintiff retained his own local counsel, who then obtained the services of Duane, Morris & Heckscher as Philadelphia correspondents. On application, the District Court ordered that the designation of the third-party defendant as "F. J. DeHaven Bus Company" be amended to read "Floyd J. DeHaven, trading as De Haven Bus Company." After this amendment had been made, defendant still declined requests by plaintiff's counsel to take over the defense of the Federal action. Eventually the case was settled between the principal

parties for $47,500, without any contribution from Floyd J. DeHaven, the third-party defendant there and plaintiff in the instant case, at a settlement conference held before Judge Alfred E. Luongo, on May 8, 1969. The amount of $2,029.76 expended by plaintiff for his defense of the Federal action is not disputed.

There are two principal issues: (1) whether the proper construction of the insurance contract indicates a duty of defendant to defend plaintiff in the Federal action; and (2) whether the facts, thus far adduced and established, are sufficient to demonstrate, without the slightest doubt, that there are no triable issues as to any fact material to the implementation of such construction: Phillips Home Furnishings, Inc. v. Continental Bank, 231 Pa. Superior Ct. 174, 184, 331 A. 2d 840, 845 (1974); Frazier v. Commonwealth of Pennsylvania, State Retirement Board, 17 Pa. Commonwealth Ct. 243, 331 A. 2d 596 (1975). Initially, plaintiff relies upon that part of the contract which reads:

". . . [T]he company shall have the right and duty to defend any suit against the insured seeking damages *payable under the terms of this policy,* even if any of the allegations of the suit are false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient." (Emphasis supplied.)

From this language, it is apparent that defendant did not undertake, without qualification, to defend *all* suits brought against plaintiff, but only those alleging a type of claim against which the policy affords insurance. Application of the language will require two steps: (1) identification of the type of claim asserted in the third-party complaint, and (2) examination of the policy to determine whether its terms extend insurance to that specific type of claim.

As to the first step, the general rule has been stated in Keller v. Gold, 28 D. & C. 2d 275, 277 (C.P. Delaware Co. 1962), where Judge Curran said:

"The obligation of an insurance company to defend an action brought against the insured under the circumstances of this case is to be determined solely by the allegations of the complaint filed in the action: Wilson v. Maryland Casualty Company, 377 Pa. 588. It is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact 'covered' under the terms of the policy: Lee v. Aetna Casualty & Surety Company, 178 F. 2d 750. So long as the complaint filed by the injured party covers an injury which may or may not fall within the coverage of the policy the insurance company is obliged to defend: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582."

In the instant case, by reference to the allegations set forth in the third-party complaint (which incorporates by reference relevant allegations found in the original complaint), the type of suit may be described as a tort claim by an innocent bystander who has sustained physical injury resulting from the mechanical malfunction of a motor vehicle in which he was travelling as a passenger, which malfunction he attributes to faulty inspection and maintenance of the vehicle by the then owner and operator, and which that owner then attributes to the prior owner and operator from whom the vehicle was acquired. For a case in which an analogous claim was successfully prosecuted, see: Topelski v. Universal South Side Autos, Inc., 407 Pa. 339 (1962). Where there is a *possibility* that the insurance contract covers the claim, it is the duty of the company to defend: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582, 589,

590, 152 A. 2d 484, 488 (1959); Gedeon v. State Farm Mutual Automobile Insurance Company, 410 Pa. 55, 58, 59, 188 A. 2d 320, 321, 322 (1963); Eastcoast Equipment Company v. Maryland Casualty Company, 38 D. & C. 2d 499 (C.P. No. 1, Phila. Co. 1965), affirmed, 207 Pa. Superior Ct. 383, 218 A. 2d 91 (1966); Annotation, 50 A.L.R. 2d 458. The company is relieved of the duty to defend only where it can be demonstrated definitively that there is no coverage of the claim: Casper v. American Guarantee & Liability Company, 408 Pa. 426, 184 A. 2d 247 (1962).

Proceeding next to the second step, in search of definition of coverage, we find the following under the heading,

"Part I-Liability:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or

"B. property damage

to which Part I applies, caused by accident and arising out of the garage operations hazard including *only* the automobile hazard for which insurance is afforded *as indicated in the declarations. . . .*" (Emphasis supplied.)

Also in part I are found the following definitions:

"Garage Operations Hazard. The ownership, maintenance or use of the *premises* for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'." (Emphasis supplied.)

"Automobile Hazards.

"1. All Automobiles

"(a) The ownership, maintenance or use of any automobile *for the purpose of garage operations,* and the *occasional* use for *other business purposes* and the

use for non-business purposes of any automobile owned by or in charge of the named insured and used *principally* in garage operations, and

"(b) The ownership, maintenance or use of any automobile *owned by the named insured* while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their *regular use.*

"2. Automobiles not Owned or Hired. The use *in connection with garage operations* of any automobile which is neither owned nor hired by the named insured, a partner therein or a member of the same household as any such person." (Emphasis supplied.)

These definitions mark out a framework of subcategories of hazard, conceived to be the sole component parts of the "garage operations hazard," which may be described in paraphrase as follows:

(1) The hazard arising from the ownership, maintenance or use of *the premises*—i.e., the physical plant, embracing the building structure, its furnishings, equipment, and surrounding terrain—for the purpose *(and for no other purpose)* of a garage.

(2) The hazard arising from the ownership, maintenance or use of *any automobile* which is (a) owned by or in the charge of the named insured, and (b) *used principally in garage operations,* where that use is either (i) for the purpose of garage operations, (ii) *occasionally,* for other business purposes, or (iii) *occasionally,* for non-business purposes.

(3) The hazard arising from the ownership, maintenance or use of *any automobile* which is (a) owned by the named insured, (b) *although not used principally in garage operations,* while that automobile is *furnished for the use of* (i) the named insured, a

partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnished automobiles for their *regular* use.

(4) The hazard arising from the use, *in connection with garage operations,* of any automobile which is *neither owned nor hired* by the named insured.

We pause momentarily to note that the involvement of the subject motor bus, as alleged by plaintiff, appears to fit the hazard described above in paraphrase 3 (interpreting part I—"Automobile Hazards" —1(b), of the garage liability policy): (1) the bus was owned by the named insured; (2) the bus was not used primarily in the operation of the garage business; (3) the bus was furnished by the named insured to himself for *regular use* in another and different business, namely, the charter bus service; and (4) plaintiff did maintain, service, and repair this bus at his garage. Defendant has denied knowledge of this last allegation and demands proof of the same at trial [answer, paragraph 3]. The allegation is reiterated, with additional treatment, in an affidavit attached to plaintiff's motion, to which defendant has not filed any counter-affidavit. Assuming arguendo, but without deciding, that the allegation is true, we pass directly to the question which now emerges as the cardinal issue in the case: Did plaintiff purchase insurance against the hazard described in Paraphrase 3?

The declarations, to which we were already directed in the portion of Part I quoted supra, provide under item 3:

"The insurance afforded is only with respect to such of the following coverages and hazards thereunder as are indicated by specific premium charge or charges. . . ."

The chart which follows indicates that plaintiff was charged an advance premium of $60.69 for coverage of bodily injury liability with respect to garage operations, including only the hazard described there as: "1. All Automobile." Further reference to this hazard appears in item 4, where the applicant for insurance is represented as declaring:

"(a) All automobiles owned by the named insured are used principally in garage operations of the named insured, except automobiles (1) assigned to the named insured, a partner therein, or an executive officer thereof, or, if a resident of the same household, the spouse of any of them or (2) furnished to any person or organization named in paragraph (b) below.

"(b) Automobiles owned by the named insured are furnished to the following persons or organizations for their regular use for other business purposes or for non-business purposes (do not list the named insured, any partner, executive officer or, if a resident of the same household, the spouse of any of them unless more than one automobile is furnished concurrently to such person and then show only the number of automobiles so furnished in excess of one):

"Name _____ ____: Number of
: Such
"Name _____ ___: Automobiles"

Under item 5, there is a space for "Furnished Auto " and spaces for the rate and advance premium to be charged for such coverage. Since all of these spaces are blank, plaintiff may be considered as having represented to defendant that he was furnishing, at one time, no more than one motor bus to himself for regular use in the charter bus service. If true, plaintiff is entitled to coverage; if not true—and if in fact plaintiff concurrently was furnishing to himself a whole fleet of motor

buses for use in the charter service business—then he is not entitled to coverage or defense by the defendant company for the reason that he never declared or paid for insurance against a hazard of that magnitude.

In paragraph 1 of the affidavit attached to the motion for summary judgment, plaintiff states.

"During the time that Plaintiff owned the bus in his individual capacity, he regularly inspected, serviced and repaired said bus in his garage which was used exclusively for the repairs, servicing and maintenance of motor vehicles, including the *buses* which he owned and operated in his individual capacity under the trade name of 'De Haven Bus Company'." (Emphasis supplied.)

Although this statement establishes that plaintiff was operating more than one bus, there is no indication on the record as to whether these were being operated *concurrently,* or one at a time in *sequential* order. This missing element is essential to the final disposition of the case. Plaintiff, who is in the best position to know the facts, should be afforded the opportunity to file a supplementary affidavit supplying this information.

## ORDER

And now, June 3, 1975, it is ordered as follows:

1. Disposition of plaintiff's motion for summary judgment is withheld for a period of 20 days following the date of this order.

2. During this interval, plaintiff may file a supplementary affidavit conveying the information requested in the above opinion.

3. At the conclusion of the 20-day period, the court will entertain a motion by either party for appropriate final disposition of the motion now pending.