**IMS Health Inc. v. Zurich American Insurance Co.**

C.P. of Philadelphia County, April Term 2014, No. 2046

MCINERNEY, *J.*, Feb. 12, 2015—Presently before this court is plaintiff IMS Health Incorporated's ("IMS") partial motion for summary judgment. Specifically, IMS seeks payment/reimbursement of defense costs by defendant Zurich American Insurance Company ("Zurich") associated with defending Sherman Act claims in the action captioned *Symphony Health Solutions Corp. et. al. v. IMS Health Incorporated*, 2:13 cv- 04290 (E.D. Pa. July 24, 2013)("underlying action"). For the reasons discussed below, the motion for partial summary judgment is granted.

On July 24, 2013, Symphony Health Solutions Corp. ("Symphony"), a competitor of IMS, filed a six count complaint in the Eastern District of Pennsylvania against IMS. The complaint alleges four counts sounding in violations of the Sherman Act, unlawful monopolization under the Sherman Act (count I), attempted monopolization under the Sherman Act (count II), monopoly leveraging under the Sherman Act (count III), and unlawful use of exclusionary contracts under the Sherman Act (count IV), and two common law counts for tortious interference with existing and prospective contractual relationships (count V), and unfair competition (count VI). Of the four Sherman Act claims, count I is the only count which includes one conclusory statement regarding "disparaging competitors" in its claim of anti-competitive conduct. The two counts alleging violations of Pennsylvania state law claims specifically allege disparagement and set forth the

conduct therein.

Zurich issued nine primary general liability policies to IMS for the periods June 30, 2003 through June 30, 2012. The Zurich policies provide defense and indemnity coverage for lawsuits involving "personal and advertising injury" to others. Specifically, the policies provide in relevant part as follows:

> ...We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

> ...The insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The Zurich policy defines "personal and advertising injury" to mean "injury...arising out of one or more of the following offenses: ...[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

IMS is the named insured on all of the Zurich Primary policies. Six Zurich primary policies GLO2923479-07 through 12 issued from June 30, 2006 to June 30, 2012 were issued to IMS in Connecticut. Zurich Primary Policies GLO2923479-07 through -09 contain an endorsement which states, "it is understood and agreed that IMS

HEALTH INCORPORTED is domiciled in Connecticut." Zurich Policy GLO2923479-10, 11 and 12 identifies IMS's mailing address as various cities in Connecticut. The earlier policies identify the mailing address of IMS with a New York address. None of the Zurich Primary Policies identifies a Pennsylvania address for IMS.

IMS provided Zurich with notice of the filing of the Symphony complaint and requested Zurich to provide it with a defense. On October 9, 2013, Zurich agreed to participate in the defense of IMS in connection with the Zurich primary policies and reserved its right to withdraw from the defense and seek reimbursement of defense costs if it was later determined that no coverage applies. On April 1, 2014, Zurich revised its coverage position with respect to the Zurich policies. Zurich agreed to continue to pay for the defense of IMS in the underlying action for the state law claims which were potentially covered under the "personal and advertising injury" subject to a complete reservation of rights. Zurich, however, disclaimed any duty to defend or indemnify IMS under any coverage part for the Sherman Act claims since the claims did not fall within the "personal and advertising claims." Zurich further concluded that since the defense costs incurred for the potentially covered state law claims and the non covered Sherman Act claims were readily apportioned, Zurich determined it has no obligation to pay for the defense of the Sherman Act claims.[1] IMS responded that reimbursement of defense costs would violate Zurich's insurance contract with IMS Health.

On April 1, 2014, Zurich instituted a declaratory

---

1. Zurich letter dated April 1, 2014 stating separate law firms were retained to represent IMS in the underlying action for the state law claims and the Sherman Act claims.

judgment action in the District Court for the District of Connecticut against IMS. In the Connecticut action, Zurich seeks a declaration that it does not have a duty to defend or indemnify IMS for the Sherman Act claims in the underlying action. Zurich also seeks an allocation of costs incurred in the defense of the non covered claims and the potentially covered claims and sought to recoup from IMS the payments it made and will make for the defense of the non covered Sherman Act antitrust claims. On May 23, 2014, IMS filed a motion to dismiss or stay, or in the alternative, transfer. In September 2014, the Connecticut court heard oral argument on said motion. The motion remains outstanding as of the writing of this opinion.

On April 18, 2014, IMS instituted this action against Zurich and various other defendants seeking in part a declaration as to Zurich's duty to defend in the underlying action. IMS has now moved for partial summary judgment on the duty to defend.

## DISCUSSION

At issue before this court is whether Zurich has a duty to defend IMS in the underlying action. IMS argues that Zurich has a duty to defend in the underlying action since potentially covered claims remain in the underlying complaint. Zurich, on the other hand, acknowledges the existence of potentially covered claims in the underlying action, however it argues that it does not have a duty to defend the non covered claim, i.e. the Sherman Act claims and seeks recoupment of the defense costs paid for the defense of said claims to date. After careful review of the parties' submissions and the applicable case law, the court finds that a conflict of law does not exist as it pertains to Zurich's duty to defend, Zurich has a duty to defend IMS

in the underlying action until a determination is made that no liability exists for all the potentially covered claims in the underlying action and any claim for reimbursement of defense costs for non covered claims is premature.[2]

Pennsylvania and Connecticut apply the same analysis to determine whether an insurer has a duty to defend. In Pennsylvania, an insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy.[3] As long as the complaint "might or might not" fall within the policy's coverage, the insurance company is obliged to defend.[4] An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the

---

2. The issue of reimbursement of defense costs of non covered claims is not ripe for determination since potentially covered claims exist in the underlying action for which a defense is required by contract. However, when a determination is made as to any liability regarding the potentially covered claims, a true conflict of law exists as to whether Zurich is entitled to reimbursement of defense costs for the non covered claims. In Pennsylvania, following a court's declaration that an insurer had no duty to defend its insured, an insurer is not entitled to reimbursement of defense costs absent an express provision in the written contract. *See, American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.,* 606 Pa. 584, 2 A.3d 526 (2010). Connecticut law, on the other hand, recognizes a cause of action for reimbursement to the extent required to ensure that the insured not reap a benefit for which it has not paid and thus be unjustly enriched. *See, Security Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.,* 264 Conn. 688, 826 A.2d 107 (2003).

3. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006); *General Accident Inc. Co. of Am. v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997).; *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 136, 1368 (1987) (describing the duty to defend as arising "whenever the complaint filed by the injured party may potentially come within the coverage of the policy.").

4. *Casper v. American Guarantee & Liability Ins. Co.,* 408 Pa. 426, 184 A.2d 247 (quoting judge Learned Hand's assertion in *Lee v. Aetna Casualty & Surety Company,* 178 F.2d 750, 752 (2d Cir.1949)).

claim does not potentially come within the coverage of the policy. The duty to defend is not limited to meritorious actions; it even extends to actions that are "groundless, false, or fraudulent" as long as there exists the possibility that the allegations implicate coverage.[5] Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.

Similarly, in Connecticut an insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage. A liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered. The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether the injured party has, in its complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability.[6] Like Pennsylvania, the duty to defend in Connecticut is triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage. Based on the foregoing, a false conflict exists and it is unnecessary to perform a choice of law analysis.

The next question to be addressed is whether the factual allegations contained in the underlying complaint

---

5. *See Allen*, 692 A.2d at 1094 ("'[T]he obligation to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action....'").

6. *Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 312 Conn. 714, 739-40, 95 A.3d 1031, 1049 (2014)(citations omitted).

triggers Zurich's duty to defend. Upon review of the factual allegations as well as the policy language it is clear that a duty to defend exists. The applicable policy at issue provides that Zurich has the right and duty to defend IMS in any "suit" seeking "personal and advertising injury" damages. The policy defines "personal and advertising" injury as "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The underlying complaint alleges facts and seeks damages for personal and advertising injury resulting from oral publications that slander IMS' organization, goods and products. The underlying complaint alleges the following:

136. IMS has initiated a campaign to defame and disparage Symphony's business in an attempt to steal clients and to prevent prospective clients from buying Symphony's products.

137. IMS has made misrepresentations that are false and material. Clients and potential clients, who have no independent knowledge of the subject matter, have relied on IMS's misrepresentations.

138. For example, an IMS representative told the senior vice president of sales for a pharmaceutical company customer that Symphony did not get compete weekly data and as a result, Symphony performs "modeling" rather than using or analyzing real data. IMS also stated that Symphony's data feeds were less accurate and could not support weekly reports; IMS then touted that it had more accurate data. As a result, the client expressed its desire to move away from Symphony and to IMS.

139. IMS told another customer's business and procurement teams that Symphony Health is "unethical and [you] should not do business with [Symphony]."

140. IMS sales representatives also told Symphony's customers that Symphony would lose access to a key data supplier. This false representation benefitted IMS. IMS's statements caused customers and potential customers to delay purchasing and switching decisions.

141. IMS told another customer that Symphony will never have access to key data on specialty drug products. IMS hid the fact that it uses exclusionary contracts to block Symphony from that data.

142. Symphony has worked to undo the effects of IMS's defamation, but upon information and belief, clients have decided to buy products from IMS instead of Symphony, as a result of IMS's disparaging statements.

143. Symphony has lost and continues to lose profits, as well as suffer damage to its reputation and good will.[7]

In fact, Zurich has acknowledged that the Pennsylvania common law claims of tortious interference of contract ana unfair competition are potentially covered because they may involve an offense by IMS resulting in "personal and advertising injury."[8] Since the underlying action asserts a claim that is potentially covered under the Zurich policies, Zurich is obligated to defend the entire suit, including the non covered claims, until and unless all claims in the suit are confined to claims that fall wholly outside the Zurich policy coverage.[9]

---

7. Underlying action.
8. Zurich's October 9, 2013 letter and April 2, 2014 letter.
9. *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606

Zurich argues that in a "mixed suit" action, a suit containing potentially covered claims and non covered claims, Connecticut law provides that an insurer is solely obligated to pay for the defense of the potentially covered claims during the pendency of the action. The court does not agree. As so eloquently articulated by the court in *Buss v. Superior Court of Los Angeles County*[10], the precedent relied upon by the Connecticut Supreme Court in adopting the approach to allow reimbursement of defense costs for non covered claims:

> [W]e can, and do, justify the insurer's duty to defend the entire "mixed" action prophylactically, as an obligation imposed by law in support of the policy. To defend meaningfully, the insurer must defend immediately. (*Montrose Chemical Corp. v. Superior Court, supra,* [6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)].) To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The "plasticity of modern pleading" (*Gray v. Zurich Insurance Co., supra,* [65 Cal.2d 263, 276, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)]) allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa.[11]

This language illustrates the problems that can be anticipated if the insurer is permitted to pick and choose which claims it will defend. Such a policy necessarily would lead to inefficiency and perhaps inconsistency in

Pa. 584, 2 A.3d 526, 542 (2010).

10. 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997)., 65 Cal. Rptr.2d 366, 939 P.2d at 775.

11. *Id.* at 939 P.2d at 775.

the resolution of disputes. Under Connecticut law, if after a conflict of law analysis demonstrates that Connecticut law is applicable, Zurich may seek reimbursement of non covered claims when a determination as to the liability for the potentially covered claims is resolved. Up until that time, Zurich has a duty to defend IMS in the underlying action.

## CONCLUSION

For the foregoing reasons, IMS' motion for partial summary judgment is granted. Zurich has a duty to defend plaintiff in the action captioned *Symphony Health Solutions Corp. et. al. v. IMS Health Incorporated*, 2:13 cv- 04290 (E.D. Pa. July 24, 2013) until all the claims in that suit are confined to a recovery that fall wholly outside the coverage provided under the Zurich policies at issue.

## ORDER

And now, this 12th day of February 2015, upon consideration of plaintiff IMS Health Incorporated's motion for partial summary judgment and defendant Zurich American Insurance Company's response in opposition, it hereby is ordered that the motion for partial summary judgment is granted. Zurich has a duty to defend plaintiff in the action captioned *Symphony Health Solutions Corp. et. al. v. IMS Health Incorporated*, 2:13 cv- 04290 (E.D. Pa. July 24, 2013) until all the claims in that suit are confined to a recovery that fall wholly outside the coverage provided under the Zurich policies at issue.[12]

---

12. At the conclusion of the underlying action, Zurich may be entitled to file an action to recoup the defense costs paid for any uncovered claims per *Security Ins. Co. v. Lumbermens Mut. Cas. Co.*, 264 Conn. 688, 716, 826 A.2d 107 (2003).