## Warner, Appellant, *v.* Employers' Liability Assurance Corporation.

Argued April 16, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Edwin D. Strite,* with him *John R. Lashley, Jr.,* for appellants.

*John McD. Sharpe,* with him *John McD. Sharpe, Jr.,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, June 28, 1957:

The United States of America brought suit in the Federal Court against the plaintiffs (appellants herein). This was for a negligent fire by which the United States of America lost the value of certain stored goods. The defendant (appellee herein) was bound under a liability insurance policy to the plaintiffs herein to defend certain actions, and was notified to appear and defend the action brought by the United States of America. The insurance company declined, alleging

that the loss was not covered by the indemnity policy. The verdict in the Federal Court was in favor of these plaintiffs and against the United States of America. The plaintiffs then brought this suit against the defendant in the state courts under the policy, to recover the cost of defending the action brought by the United States of America against them. Plaintiffs appeal from judgment on the pleadings entered by the court below in favor of defendant.

The pleadings in the instant case include the complaint of the United States, together with the contracts for storage, in the suit filed against appellants; and the complaint of appellants in this action; as well as responsive pleadings denying appellee's liability herein.

When notified by appellants of the action brought by the United States, appellee disclaimed duty to defend that action. Thereupon appellants proceeded to defend successfully, and expended the costs sued for here. The question raised in this case is whether appellee assumed such duty, i.e. whether judgment was properly entered upon the pleadings.

The policy provided, inter alia, that: (1) *"As respects insurance afforded by this policy* the Company shall (a) defend . . . any suit against the Insured alleging such injury, . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the Company"; and (2) "This policy does not apply: . . . (d) . . . to injury or destruction of (1) property . . . in the care, custody, or control of the Insured. . ."

There were two storage contracts involved. One of the contracts provided, inter alia: "The Lessor shall have charge and control of the property of the lessor

. . ., including the storage space leased hereby . . ., and shall be solely responsible for the operation and management of said property and the equipment thereon. Whenever the Lessee requests that any materials . . . be stored . . . or removed therefrom, the Lessor shall perform the necessary services, including supervisory service, in connection with such storage (or removal). . . Without limiting the generality of the foregoing, the Lessor shall furnish all necessary heat, power, electricity, water, *equipment, watchmen, fire protection* and also the labor and supervisory staff to perform such services"; (Italics supplied). The other contract provided, inter alia: "We [appellants] . . . hereby offer to *receive, unload and keep safely in . . . storage . . .,* in accordance with approved commercial practice . . ., the commodities listed hereunder. . . We agree to . . . *remove from storage, load and deliver* the same to . . . We shall not be charged for failure or delay in returning . . . the commodities . . . when said failure or delay is occasioned by causes without our fault or negligence. . . We agree to accept for storage and to continue such storage until ordered out by [the United States]. . . We agree to allow authorized representatives of [the United States] . . . to make inspection, at any time, of the warehouse and its equipment and of the commodities stored hereunder, . . . In the event deterioration, infestation, or other change of condition is detected in any part of the commodities stored hereunder, a notice [thereof] . . . shall be given to [the United States of America] . . . immediately." (Italics supplied).

While policies of insurance will be construed most strongly against insurer (*Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company,* 385 Pa. 394, 397, 123 A. 2d 413), it is a necessary prerequisite to recovery upon a policy for the insured

to show a claim within the coverage provided by the policy: *Fullmer v. Farm Bureau Mutual Automobile Insurance Company,* 350 Pa. 451, 452, 39 A.. 2d 623. We find, as did the court below, that the only reasonable interpretation to be given to the agreements of storage is that appellants were given "care, custody and control" of the materials stored with them. They supplied not only space, but also equipment and labor for the same; and were responsible for loss or destruction except where they were neither at fault nor negligent. In fact, it contained such provisions as "allowed" inspection of the premises, equipment, and commodities by the parties delivering the goods for storage. In all respects there is within the agreements themselves conclusive proof that appellants had the "care, custody and control" of the goods. To declare otherwise would be to disregard the common and accepted meaning of the words of the contract.

But appellants contend that they should be given the opportunity to try the case on its merits. We cannot sustain this contention. We have here only an interpretation of written instruments. The averred facts show, as a matter of law, that plaintiffs are not entitled to recover; and in such case the court not only has the power, but the duty, to decide the effect thereof. See *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 573, 79 A. 2d 262. There is nothing in this case to be presented to a jury, there being only a question of law,—which was correctly resolved by the court below.

Appellants further contend that appellee was under a duty to defend by the provision that the insurer would defend "even if such suit is groundless, false or fraudulent." But this applies only *"as respects insurance afforded by this policy."* It does not require defense of *any* suit brought, but only suits involving *claims within the scope of the policy;* even

though these be groundless, false or fraudulent. In the instant case, there is no question that the claim is founded upon a matter which came within the provision *excluding* the duty of appellee to defend. As we declared in *Wilson v. Maryland Casualty Company*, 377 Pa. 588, 591, 105 A. 2d 304, if this contention were to be upheld "the Company would be obliged to defend any and every action brought against its insured, no matter what its nature, if informed by the insured that the claim was false (groundless) or if it was in fact false (groundless), even though liability in respect to it was not insured by the terms of the policy. It is obvious that the Company's obligation was not to defend all suits and claims whatsoever merely because they were groundless, but to defend all suits and claims *covered by the policy whether or not* they were groundless. In other words, a cause of action was *not* insured *because* of its being false, but was insured *if covered by the policy, whether or not it was false.* The question is not as to the truth or falsity of a claim, but whether it is covered by the policy; if it is, the Company must defend it; if it is not, its truth or falsity is wholly immaterial." Neither the logic nor the correctness of this conclusion can be questioned.

Appellants further complain that because the copy of the amended complaint, filed against them by the United States, did not contain a copy of the second contract, no judgment could be entered on these pleadings. But, in the instant proceeding, it was acknowledged that said contract did so exist and the terms above set forth were therein contained. Nor is there any question that the original copy of the complaint filed by the United States did contain as an exhibit a copy of that contract. All matters were before the court below; and it must also be declared that all

matters were before the appellee at the time that it denied duty to defend the action filed by the United States. Nor would it serve any purpose to send the matter back to the court below, since the ultimate conclusion would necessarily be the same. Under all of the circumstances, the court below had before it, in the form of pleadings, all matters upon which the determination could be made; and its conclusion is inescapable. Thus, there was nothing remaining to be submitted to a jury for determination.

Judgment affirmed.