**KEENE CORPORATION, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

Civ. A. No. 78–1011.

United States District Court, District of Columbia.

Nov. 19, 1984.

As Amended Jan. 11, 1985.

Harold D. Murry, Jr., Clifford & Warnke, Eugene Anderson, Jerold Oshinsky, Arthur S. Olick, Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiff.

Dennis M. Flannery, Wilmer, Cutler & Pickering, Washington, D.C., Michael R. Gallagher, Thomas E. Betz, Gallagher, Shrap, Fulton, Norman & Mollison, Cleveland, Ohio, Frank W. Gaines, Jr., Robert L. Hoegle, Olwine, Connelly, Chase, O'Donnell & Weyher, Washington, D.C., Gerald V. Weigle, Jr., Dinsmore, Shohl, Coates & Depree, Cincinnati, Ohio, John F. Mahoney,

Jr., James E. Rocap, Stephen L. Nightingale, John P. Arness, William J. Bowman, Hogan & Hartson, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiff Keene Corporation's ("Keene") motion for partial summary judgment regarding defendant Insurance Company of North America's ("INA") continuing duty to defend, defendant's opposition thereto and cross-motion for partial summary judgment, plaintiff's opposition thereto, the parties' respective replies, and the entire record herein.[1]

Keene contends that defendant INA's duty to defend Keene in underlying asbestos cases continues after the exhaustion of aggregate policy limits. Specifically, Keene alleges that the defense duty under INA's pre-1966 insurance policies continues for all present and future asbestos cases. Keene's Statement of Points and Authorities in Support of Its Motion for Partial Summary Judgment With Respect to the Defendants' Continuing Duty to Defend Keene and to Pay Keene's Defense Costs ("Keene's Motion") at 1–2.

For the reasons stated below, the Court finds that defendant INA's duty to defend Keene in underlying asbestos cases ceases upon the exhaustion of indemnity limits under the pre-1966 policies in question. Therefore, the Court denies Keene's motion for partial summary judgment and grants the cross-motion of INA.

## I.

### Background

All pre-1966 policies were sold to Keene by INA, with policy periods from December 31, 1956 to January 1, 1968. Keene's Motion at 4. The defense agreement set forth

---

1. Keene originally filed its motion for partial summary judgment regarding the continuing duty to defend against all four defendants in this case. Before the Court's decision, however, Keene withdrew all claims against Aetna Casualty and Surety Company, Hartford Accident and Indemnity Company, and Liberty Mutual Insurance Company. Keene also withdrew its claim against INA except for the alleged continuing duty to defend under defendant's pre-1966 insurance policies.

in Paragraph IV of the policies states in pertinent part:

> With respect to such insurance as is afforded by this policy the company shall: (a) defend any suit against the insured ... even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; ....
>
> \*     \*     \*     \*     \*     \*
>
> and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

Appendix 2 to Keene's Motion ¶ IV.

In 1966, the insurance industry revised the standard policy language to provide that "[the insurer] shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of [the insurer's] liability has been exhausted by payment of judgments or settlements." Appendix 3 to Keene's Motion ¶ I.

INA notified Keene that the indemnity limits of the pre-1966 policies were exhausted and that defense obligations would be transferred to Keene's excess liability insurance carriers.[2] Affidavit of Howard A. Mileaf (executed Aug. 21, 1984); INA's Statement of Material Facts as to Which There is No Genuine Issue ¶ 4.

Under the excess policies, the carriers agreed to pay Keene's "ultimate net loss," which included indemnity and defense costs. In some cases, defense costs were charged against the aggregate policy limits rather than paid in addition to indemnity limits as they are under the primary insurance policies. Keene's Motion at 7.

## II.

### Discussion

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1262 (D.C.Cir. 1972) (quoting *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213, 216 (8th Cir. 1951)).

The issue before the Court is whether INA's duty to defend under its pre-1966 insurance policies terminates upon the exhaustion of the policies' indemnity limits. Since no material facts concerning this issue are in dispute, the Court properly may consider the question on cross-motions for summary judgment. *See supra* note 2.

Keene contends that the standard pre-1966 policy language creates an unqualified duty of INA to continue paying defense costs in all asbestos-related lawsuits now pending or subsequently brought against Keene. INA's duty to defend[3] would not terminate until the actions against Keene ceased and all cases were fully litigated.

Keene relies primarily on three cases interpreting the standard pre-1966 policy language as to the continuing duty to defend in underlying asbestos cases. After finding the language ambiguous, the courts construed the policies liberally in favor of the insured. The courts held the insurers to "an unqualified and unlimited as to dollar amount duty to 'defend any suit against the insured.'" *Zurich Insurance Co. v. Raymark Industries, Inc.*, No. 78 L 8760 at 6 (Ill.Cir.Ct. Cook Cty. June 15, 1982); *ACandS, Inc. v. Aetna Casualty and Surety Co.*, 576 F.Supp. 936, 942 (E.D.Pa.), appeals docketed, Nos. 83–1927, 1928 (3d Cir.1983); *Commercial Union Insurance Co. v. Pittsburgh Corning Corp.*, 553 F.Supp. 425, 429 (E.D.Pa.1981).

After careful consideration, this Court disagrees with those decisions and finds

---

**2.** In deciding these cross-motions, the Court need not address the issue of whether the policies' limits have been exhausted in fact.

**3.** The "duty to defend" involves both the obligations to control litigation and pay defense costs.

*Tampa Electric Co. v. Stone & Webster Engineering Corp.*, 367 F.Supp. 27, 32 (M.D.Fla.1973). Keene does not seek to transfer the management of pending cases, but only to obligate INA to pay defense costs. Keene's Motion at 3 n. 3.

that the intention of the parties was not to create a continuing duty of defense after the exhaustion of policy limits.

The Court agrees with Keene that Pennsylvania law applies to the duty-to-defend issue as to the pre-1966 policy language.[4] The Court disagrees, however, that it is bound by the decisions of the Federal court for the Eastern District of Pennsylvania in which the defense duty was found to continue indefinitely. The Federal court merely predicted the outcome under Pennsylvania law; no State court has considered the issue at hand. In *Commercial Union,* the Federal court noted the lack of Pennsylvania authority on which to base its prediction. *Commercial Union Insurance Co. v. Pittsburgh Corning Co.,* 553 F.Supp. at 430.

■ This Court must make its own prediction of what Pennsylvania State authority would hold in the instant controversy after consideration of all available data. *Glassman Construction Co. v. Fidelity & Casualty Co. of New York,* 356 F.2d 340, 342 n. 7 (D.C.Cir.), *cert. denied,* 384 U.S. 987, 86 S.Ct. 1890, 16 L.Ed.2d 1005 (1966). Decisions of other Federal courts are not conclusive and need not be followed if "contrary to the more cogent reasoning of the best and most wide-spread authority." *Ward v. Hobart Manufacturing Co.,* 450 F.2d 1176, 1180 n. 5 (5th Cir.1971); *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662–63 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

This Court believes that the *Commercial Union* and *ACandS* decisions failed to interpret the insurance policies in accordance with well-established rules of construction and wrongly predicted the trend of the Pennsylvania Supreme Court.

In interpreting the pre-1966 policy language, neither court attempted to ascertain the intent of the parties. The language simply was deemed ambiguous and construed in favor of the insured.

■ The interpretation of an insurance policy requires the same rules generally as the construction and interpretation of other written contracts. *See* 4 *Williston on Contracts* § 625 at 828 (3d ed. 1961). "[T]he task of the District Court is to determine the intention of the parties to [the contract]. 'It is an elementary principle of contract interpretation that the plain and unambiguous meaning of a written contract is controlling, in the absence of some clear evidence indicating a contrary intention.'" *Pennsylvania Avenue Development Corp. v. One Parcel of Land in the District of Columbia,* 670 F.2d 289, 292 (D.C.Cir.1981) (quoting *Vogel v. Tenneco Oil Co.,* 465 F.2d 563, 565 (D.C.Cir.1972)); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1009 (3d Cir. 1980). The Court must determine first whether the language is "plain and unambiguous" and therefore controlling as a matter of law or whether the words are ambiguous and in need of interpretation through rules of construction and objective evidence of the parties' intent.

■ Courts have defined ambiguity as being "'*reasonably* susceptible of different constructions or interpretations.'" *Papago Tribal Utility Authority v. F.E.R.C.,* 723 F.2d 950, 955 (D.C.Cir.1983) (emphasis added); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d at 1011. The reasonableness of different interpretations of an insurance policy is determined by the

---

4. Only INA sold insurance policies to Keene or its predecessor subsidiaries before 1966. INA is a Pennsylvania corporation with its principal place of business in Pennsylvania. The policies at issue were executed in Pennsylvania, and sold and issued by a Pennsylvania insurance broker. Keene's Reply in Further Support of Its Motion for Partial Summary Judgment and in Opposition to Defendants' Cross-Motions for Partial Summary Judgment Regarding Defendants' Duty to Pay Defense Costs at 4 ("Keene's Reply"), quoting Memorandum of INA in Support of Its Motion for Summary Judgment as to Keene's Claims for Punitive Damages at 4 n. 7. Under the District of Columbia's "interest analysis," *Mazza v. Mazza,* 475 F.2d 385, 388 (D.C.Cir. 1973), Pennsylvania has the most substantial interest in the interpretation of the insurance policies. INA does not dispute the application of Pennsylvania law.

intent of the insured, rather than the insurer. "[T]he test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of an insured would understand them to mean." *St. Paul Fire and Marine Insurance Co. v. Thompson*, 150 Mont. 182, 433 P.2d 795, 798 (1967); *Keene v. INA*, 667 F.2d 1034, 1041 (D.C.Cir.1981).

■ Pennsylvania law does not limit the court to a "four corners" approach in determining whether the language is ambiguous. Rather, the role of the judge is "to consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d at 1011. "If no 'reasonable' alternative meanings are put forth, then the writing will be enforced as the judge reads it on its 'face.'" *Id.* at 1012 n. 13 (citing *International Systems, Inc. v. Personnel Data Systems*, slip op. (Pa. Jan. 18, 1980)).

■ In the instant case, the Court finds the policy language unambiguous. INA agreed to "defend any suit" brought against Keene, but *specifically* limited that duty "with respect to such insurance as is provided by [the] policy." The language unquestionably limits the insurer's duty to defend. The issue is whether that duty is limited only by the nature of the claim or also by the amount of indemnity provided under the policy. The Court finds the language susceptible of only one reasonable interpretation: the policies limit the duty to defend to both the nature and the amount of insurance provided.

Reference only to the nature of insurance provided is an unreasonably narrow construction. "Insurance is composed not only of *type* of coverage, but also *amount* of coverage. To be insured only as to type of coverage is no protection at all. Another dimension is involved, the *amount* of that coverage." *Liberty Mutual Insurance Co. v. Mead Corp.*, 219 Ga. 6, 131 S.E.2d 534, 536 (1963) (emphasis in original); *see also Denham v. LaSalle-Madison Hotel Co.*, 168 F.2d 576, 584 (7th Cir.1948) (Standard pre–1966 insurance policy language "cannot reasonably be ... construed" to continue insurer's defense duty after exhaustion of policy limits.).

■ The Court is bound to give insurance policies "a practical, reasonable, and fair construction consonant with the apparent object and intent of the parties.... Strained or forced constructions ... are to be avoided." 43 Am.Jur.2d *Insurance* § 276 (1982). The primary objective of the insurance policies in question was to provide Keene with indemnification coverage up to a certain monetary limit. *Keene Corp. v. Insurance Co. of North America*, 667 F.2d at 1041. The parties agreed to a supplemental duty to defend Keene, which reasonably continued as long as INA's duty to pay damages. Without offering any objective evidence of a contrary intent, Keene suggests that it reasonably could have expected the defense duty to continue long past INA's payment of the policy limits. This construction would remove any connection between the duty to defend and the payment of insurance premiums. Therefore, an insured paying higher premiums would receive no more defense protection. To alleviate its future financial burden, Keene is offering the Court a strained construction which the Court cannot accept in good faith.

The Court of Appeals for the District of Columbia recognized the limiting effect of the pre-1966 policy language in *Knippen v. Glens Falls Insurance Co.*, 564 F.2d 525 (D.C.Cir.1977). That case involved a question of whether the duty to pay supplementary costs continued after the exhaustion of policy limits. In holding that the duty did continue, the court relied in part on the absence of similar limiting language. The court found that the *Glens Falls* insurance policy lacked the "general limitation" of the pre-1966 policies and thus "required the company to 'defend any suit ...' without any other limitation." *Id.*

We do not read the phrase "in any such suit" as permitting the company to avoid

its liability for costs by withdrawing from the suit prior to the entry of judgment, particularly where, as here, this duty is not subject to the "[w]ith respect to such insurance as is afforded by this policy" limitation of the contract in *National Union.*

*Id.* at 530 (citing *National Union Insurance Co. of Washington, D.C. v. Phoenix Assurance Co. of New York,* 301 A.2d 222 (D.C.1973)) (Insurer's duty to defend under pre-1966 policy language terminated upon payment of policy limits into court.).

In the instant case, the duty to defend is limited additionally by the policies' introductory sentence, which provides that the parties enter into the insurance contract "subject to the limits of liability, exclusions, conditions and other terms of [the] policy." Appendix 2 to Keene's Motion. The Court may not disregard this clause in interpreting the policy language. "Under general contract law, ... the Court determines the intention of the parties from the language used by the parties to express their agreement.... In performing this task the Court should construe the contract as a whole so as to give meaning to all of the express terms." *Washington Metropolitan Area Transit Authority v. Mergentime Corp.,* 626 F.2d 959, 961 (D.C.Cir. 1980) (citations omitted); *O'Brien & Gere Engineers, Inc. v. Taleghani,* 525 F.Supp. 750, 760 (E.D.Pa.1981). The introductory language clearly notified Keene that all rights and duties under the policy were "subject to the limits of liability," including the duty to defend.

■ The asbestos-related cases cited by Keene failed to mention similar introductory language. This Court finds that such language, together with the limiting phrase immediately preceding the defense agreement, clearly and unambiguously terminates the duty to defend upon the exhaustion of policy limits.[5]

This interpretation is supported by a majority of well-reasoned opinions. *E.g., Denham v. LaSalle-Madison Hotel Co.,* 168 F.2d 576 (7th Cir.1948); *National Union Insurance Co. of Washington, D.C. v. Phoenix Assurance Co. of New York,* 301 A.2d 222 (D.C.App.1973); *Liberty Mutual Insurance Co. v. Mead Corp.,* 219 Ga. 6, 131 S.E.2d 534 (1963); *Travelers Indemnity Co. v. New England Box Co.,* 102 N.H. 380, 157 A.2d 765 (1960); *Lumbermen's Mutual Casualty Co. v. McCarthy,* 90 N.H. 320, 8 A.2d 750 (1939).

In *Lumbermen's Mutual Casualty Co. v. McCarthy,* the New Hampshire Supreme Court held that "upon performance of [an insurer's] duties of payment its duty to defend ceases to exist and the further defense of any action pending thereafter must be conducted and may be controlled by the insured." 8 A.2d at 752. To hold otherwise, the court said, would create an anomaly.

> [T]o construe [the provisions concerning settlement and defense] as independent of that duty to pay would result, in view of the provisions of the policy which give the insurer full control over the settlement of claims and the conduct of litigation, in placing the duty of defense upon the shoulders of one not obligated to pay, and in removing control over settlement and litigation from the hands of the insured who, in the event of a verdict and final judgment against him, would have to pay damages.

*Id.; see also Denham v. LaSalle-Madison Hotel Co.,* 168 F.2d at 584 ("Defendant's theory would produce the incongruous situation that plaintiff would have a continuing obligation to defend, notwithstanding its obligation to pay has been exhausted.").

In contrast, other courts have held that the pre-1966 policy language creates a continuing duty to defend after the exhaustion of policy limits. *American Casualty Co. of Reading, Pa. v. Howard,* 187 F.2d 322 (4th Cir.1951); *Anchor Casualty Co. v.*

---

**5.** Keene argues that the language of the defense agreement requiring the insurer to pay defense costs "in addition to" indemnity limits creates a defense duty entirely independent of the duty to indemnify. This language, however, simply prohibits the insurer from reducing indemnity limits by defense costs, as permitted under some of Keene's excess insurance policies.

*McCaleb,* 178 F.2d 322 (5th Cir.1950); *St. Paul Fire and Marine Insurance Co. v. Thompson,* 150 Mont. 182, 433 P.2d 795; *Kocse v. Liberty Mutual Insurance Co.,* 159 N.J.Super. 340, 387 A.2d 1259 (1978); *American Employers Insurance Co. v. Goble Aircraft Specialties, Inc.,* 205 Misc. 1066, 131 N.Y.S.2d 393 (1954).

These decisions can be distinguished on their facts, however. None involved an insurer who had defended the insured in good faith until the policy limits were paid by judgment or settlement. Rather, the insurer in most cases tendered the policy limits into court *before* conducting any defense.

The courts' concern was that by tendering the limits, the insurer would avoid all burdens of defense, even those associated with the payment of the policy limits. Thus, the insured would receive no defense coverage as provided by the policy. "The defense of such suits by the insurer is a valuable right of the insured for which he pays and to which he is entitled by the very words of the policy." *American Casualty Co. of Reading, Pa. v. Howard,* 187 F.2d at 327; *see also Simmons v. Jeffords,* 260 F.Supp. 641, 642 (E.D.Pa.1966) ("[A] most significant protection afforded by the policy—that of defense—is rendered a near nullity" if the duty to defend terminates upon tendering the limits); 7C Appleman *Insurance Law and Practice* § 4682 at 36 (rev. ed. 1979) (The decisions that required a continuing duty to defend were "a way to make sure the insurer would not abandon the insured by simply depositing its limits in court.").

Similarly, in *American Employer's Insurance Co. v. Goble Aircraft Specialties, Inc.* the insurer sought a declaratory judgment that once the policy limits were exhausted, the insurer could abandon its defense of the insured in multiple-related tort actions. The New York Supreme Court refused to permit the insurer "to withdraw counsel and cease to defend such actions." 131 N.Y.S.2d at 400.

*Goble,* however, involved several tort actions arising from the same set of facts and a request for a declaratory judgment. The insurer had not yet defended the insured in good faith in any of the actions. The insurer, therefore, could have settled quickly up to the policy limits to avoid further defense costs. In addition, the transfer of defense duties for related claims may have been unreasonably time-consuming and expensive.

Unlike *Goble,* the underlying asbestos claims in the instant case are unrelated, the number of future claims is unknown, and INA has defended Keene in good faith up to the policies' limits. Likewise, unlike the tendering case, INA is not trying to avoid its defense duty for which Keene paid. Under the pre-1966 insurance policies, Keene contracted for the protection of indemnification and defense up to the policies' limits, and no more. INA has paid in defense costs several times the $6 million expended in indemnity payments on Keene's behalf. INA's Statement of Points and Authorities in Support of Its Cross-Motion for Partial Summary Judgment and in Opposition to Keene's Motion for Partial Summary Judgment With Respect to the Duty to Defend and to Pay Defense Costs at 3. This Court may not read the policy language to create an ambiguity and thereby provide greater coverage to Keene than that intended by the parties at the time of contracting. *Tookmanian v. Safe Harbor Water Power Corp.,* 505 F.Supp. 920, 922 (E.D.Pa.1981).

Furthermore, the transfer of defense duties to Keene's excess insurers has been accomplished without prejudice to Keene. Plaintiff contends that it may suffer damages if excess indemnity limits are consumed by defense costs. Keene's Motion at 7–8. The possible financial burden of which Keene complains, however, does not constitute the legal prejudice required to invoke judicial protection. *See Liberty Mutual Insurance Co. v. Mead Corp.,* 131 S.E.2d at 536 ("There is no allegation that the insured suffered any prejudice of its rights by the insurer's withdrawal; the only damage of which it complains is monetary."); *Commercial Union Insurance*

Co. v. Pittsburgh Corning Corp., 553 F.Supp. at 432. Keene has not alleged that its rights in any of the underlying asbestos cases have been sacrificed by the transfer of defense duties.

■ Even if the Court found the policy language ambiguous, its ruling would not differ. The Court's foremost task is to determine the intent of the parties from the language and surrounding circumstances. Only if that intent cannot be ascertained, may the Court apply the rule of construction in favor of the insured. See Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d at 1009 (citing O'Farrell v. Steel City Piping Co., 266 Pa.Super. 219, 403 A.2d 1319, 1324 (1979)). In construing ambiguous language, a court must consider objective evidence of the insured's intent.[6] Id. at 1011.

■ The most important evidence is "[t]he interpretation that the parties themselves give a contract, as manifested by their conduct subsequent to formation." Barcelona v. Fox Grocery Co. Employees' Pension Plan, 483 F.Supp. 1128, 1132 (W.D.Pa.1980). Keene's conduct in the instant case belies Keene's assertion that INA's duty to defend continues after the exhaustion of policy limits. Keene purchased excess insurance coverage that included an obligation to defend, which indicates no reliance on INA's continuing duty. No reasonable insured would pay twice for the same coverage. In view of the policy language and plaintiff's conduct, Keene could not reasonably have understood INA's defense duty to be limitless.[7]

Keene urges the Court to ignore its reasonable expectations under the specific circumstances of the instant case and, instead, blindly follow the two asbestos-related cases in which the United States District Court for the Eastern District of Pennsylvania found the pre-1966 language ambiguous and strictly construed the policy against the insurer. Commercial Union Insurance Co. v. Pittsburgh Corning Corp., 553 F.Supp. 425; ACandS, Inc. v. Aetna Casualty and Surety Co., 576 F.Supp. 936.

As stated previously, the actual intention of the parties was ignored. The courts failed to consider any objective evidence of the insureds' intentions.

Furthermore, this Court disagrees with their prediction of Pennsylvania law. In Commercial Union, the court held that Pennsylvania would find for the insured "because of Pennsylvania's protection of insureds generally, and its rule of strict construction against the insurers, generally." Commercial Union Insurance Co. v. Pittsburgh Corning Corp., 553 F.Supp. at 431. The court fails to cite any State authority to support its conclusion other than cases dealing with the duty of insurers to defend types of claims potentially within the policy's coverage. Gedeon v. State Farm Mutual Automobile Insurance Co., 410 Pa. 55, 188 A.2d 320 (1963); Brugnoli v. United National Insurance Co., 284 Pa.Super.Ct. 511, 426 A.2d 164 (1981); Seaboard Industries, Inc. v. Monaco, 258 Pa. Super.Ct. 170, 392 A.2d 738 (1978). None of the cases involves the defense of claims after the exhaustion of policy limits, as the court in Commercial Union notes. Commercial Union Insurance Co. v. Pittsburgh Corning Corp., 533 F.Supp. at 430.

The courts in Commercial Union and ACandS failed to recognize the language of Pennsylvania courts limiting the insurer's duty to defend to claims in which the

---

6. Extrinsic evidence of intent ordinarily is a question of fact to be resolved by the factfinder. But "where the evidence and resulting inference are uncontroverted," the issue is appropriate for summary judgment consideration. Fox v. United States Department of Housing, 680 F.2d 315, 319 (3d Cir.1982).

7. Keene argues that the insurance industry's revision in 1966 of the standard policy language demonstrates the ambiguity of the pre-1966 language and INA's capability to clarify the language. The effect of the revision, however, was to prohibit the tendering of policy limits into court to avoid the defense duty, thus limiting the termination of the defense duty to the exhaustion of policy limits by the payment of judgments or settlements. See Conway v. Country Casualty Insurance Co., 92 Ill.2d 388, 65 Ill.Dec. 934, 937, 442 N.E.2d 245, 248 (1982).

insurer would be "bound to indemnify" or which are "potentially within the scope of the policy." *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 105 A.2d 304, 307 (1954); *Casper v. American Guarantee & Liability Insurance Co.,* 408 Pa. 426, 184 A.2d 247, 250 (1962); *see also Warner v. Employers' Liability Assurance Corp.,* 390 Pa. 62, 133 A.2d 231, 233 (1957).

In addition, the Pennsylvania Supreme Court has held that the pre-1966 standard policy language limits the duty to defend as to the type of claim.

> Appellants further contend that appellee was under a duty to defend by the provision that the insurer would defend "even if such suit is groundless, false or fraudulent." But this applies only *"as respects insurance afforded by this policy."* It does not require defense of *any* suit brought, but only suits involving *claims within the scope of the policy* . . . .

*Warner v. Employers' Liability Assurance Corp.,* 133 A.2d at 233 (emphasis in original).

The State courts' language in limiting the duty to defend is broad enough to encompass the amount of liability as well as the type of claim. An insurer is "bound to indemnify" only for certain types of claims *and* up to a certain amount. The "scope of the policy" includes the type of claims *and* the amount of indemnification.

Pennsylvania's strict construction of ambiguous language against insurers when the parties' intentions cannot be ascertained does not lead automatically to a conclusion that insureds will be protected. The courts' recognition of the pre-1966 policies' limiting clause and their use of broad language to limit the duty to defend, more clearly implies a tendency to terminate the defense duty upon the exhaustion of policy limits.

The Court, therefore, denies Keene's motion for partial summary judgment and grants the cross-motion of INA.