**James P. LITTLE, Plaintiff,**

v.

**MGIC INDEMNITY CORPORATION, and American Casualty Company, a/k/a American Casualty Company of Reading, a subsidiary of Continental Casualty Company and CNA Financial Corp., Defendants.**

**Civ. A. No. 86–275.**

United States District Court, W.D. Pennsylvania.

Dec. 23, 1986.

Frederick W. Thieman, Pittsburgh, Pa., for plaintiff.

Michael P. Tone, Theodore A. Boundas, James A. Skarzynski, Sheldon G. Karasik, David B. Olaussen, Peterson, Ross Schloerb & Seidel, Chicago, Ill., Mark J. Gesk, Wayman, Irvin & McAuley, Pittsburgh, Pa., for defendants.

## OPINION

COHILL, Chief Judge.

### I. FACTS

This case revolves around a Directors and Officers insurance policy ("D & O policy") purchased by Union National Bank of Pittsburgh ("UNB") for the benefit of its directors and officers. The policy was issued by MGIC Indemnity Corp., and subsequently transferred to and assumed by the American Casualty Co. Plaintiff James P. Little was a vice-president of the commer-

cial loan department during the period the policy was in effect.

Beginning in 1983, UNB was named as defendant in a series of lawsuits brought in this court by five other banks and lending institutions.[1] In each case, the underlying transactions were essentially the same; two of UNB's customers had allegedly used fraudulent letters of credit to defraud those banks and lending institutions. Plaintiff Little was named as a third party defendant by UNB in each of the lawsuits.

Here, Little is seeking a declaratory judgment, ordering defendants to pay the costs of defense and attorneys fees associated with the other ongoing cases. Defendants maintain that the D & O policy allows them complete discretion to decide whether to reimburse directors and officers as their defense expenses are incurred. Defendants have steadfastly refused to advance plaintiff's defense costs. The matter is presently before the court on plaintiff's motion for summary judgment.

## II.  ANALYSIS

### A.  *Case Law from other Jurisdictions*

We begin by noting that this issue has already been addressed by a number of other courts, based on D & O policies containing language essentially identical to the language of the D & O policy in this case. Two recent cases have both held that the D & O policy requires the insurer to reimburse defense costs as they accrue. *Okada v. MGIC Indemnity Corp.*, 795 F.2d 1450, 1453–55 (9th Cir.1986) (insurer ordered to pay defense costs as they became due, because ambiguous language in the D & O policy must be resolved in favor of the insured under Hawaiian law); *PepsiCo, Inc. v. Continental Casualty Co.*, 640 F.Supp. 656, 659–60 (S.D.N.Y.1986) (insurer found to have obligation of contemporaneous payment of defense costs, subject to reimbursement in the event that directors

or officers are found to have been materially dishonest). Both of these cases were decided on motions for summary judgment.

Several district courts which have addressed this issue have reached a different conclusion. *Enzweiler v. Fidelity & Deposit Company of Maryland*, Civil Action No. 85–99, slip op. at 2 (E.D.Ky. May 13, 1986) (the insurer has the option to elect to await "the outcome of the underlying litigation" before advancing payment of defense costs, because the judgment in the underlying actions may be such that there is no coverage"); *Clandening v. MGIC Indemnity Corp.*, CV 83–2432–LTL, Transcript of Proceedings 7–8 (C.D.Cal. May 23, 1983) (insured's claim dismissed on finding that the insurer has no obligation to pay defense costs when incurred during litigation); *Bank of Commerce & Trust Co. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 651 F.Supp. 474 (N.D.Okla.1986) (insurer had no obligation until it was established that the insured officer's actions were (1) made on behalf of the employer who purchased the policy, and not on behalf of the officer's other businesses, and (2) not excluded by the policy). We also note other cases which the defendant has cited in support of its position. *Gribaldo, Jacobs, Jones & Assoc. v. Agrippina Versicherunges A.G.*, 3 Cal.3d 434, 91 Cal.Rptr. 6, 476 P.2d 406 (S.Ct.1970); *California Chiropractic Association v. CNA*, No. C 579 326 (Cal.Super. June 26, 1986); *Continental Casualty Co. v. Board of Education*, 302 Md. 516, 489 A.2d 536, 539 (Ct.App.1985); *Amrep Corp. v. American Home Assurance Co.*, 81 A.D.2d 325, 440 N.Y.S.2d 244, 246 (1981).

### B.  *Insurance Contracts under Pennsylvania Law*

There are well established principles of interpretation for insurance contracts un-

---

1.  *ITT Commercial Finance Corp. v. Union National Bank of Pittsburgh*, Civil Action No. 83–2512; *First National Bank of Boston v. Union National Bank of Pittsburgh*, Civil Action No. 83–2684; *Bankers Guarantee Title & Trust Co. v. Union National Bank of Pittsburgh*, Civil Action

No. 83–2780; *Bank of Tokyo Trust Co. v. Union National Bank of Pittsburgh*, Civil Action No. 83–2893; *First National Bank of Boston v. Union National Bank of Pittsburgh*, Civil Action No. 85–2342.

der Pennsylvania law. *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Insurance Company,* — Pa. —, 517 A.2d 910 (1986); *Standard Venetian Blind Co. v. American Empire Insurance,* 503 Pa. 300, 304–305, 469 A.2d 563, 566 (1983); *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760–61 (3d Cir.1985); *Houghton v. American Guaranty Life Insurance Co.,* 692 F.2d 289, 291 (3d Cir. 1982). Insurance contracts are interpreted by the court, not a jury. *Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 398 A.2d 1378 (1979). The court must ascertain the intent of the parties as manifested by the language of the written instrument. *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974).

### 1. *The Issue of Ambiguity*

Pennsylvania law provides that, if a provision in an insurance contract is ambiguous, it is to be construed in favor of the insured and against the insurer who drafted the agreement. *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974). However, if the language of the contract is clear and unambiguous, the court must give effect to that language, regardless of whether the insured failed to read the contract. *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.,* 426 Pa. 453, 233 A.2d 548 (1967); *Olson Estate,* 447 Pa. 483, 488, 291 A.2d 95, 98 (1972) (quoting *Orner v. T.W. Phillips Gas & Oil Co.,* 401 Pa. 195, 199, 163 A.2d 880, 883 (1960)).

### 2. *The Issue of Unconscionability*

The Pennsylvania Supreme Court has enunciated the following principle on the issue of unconscionability:

[I]n light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance. See 13 Pa.C.S. § 2302 (court may refuse to enforce contract or any clause of contract if court as a matter of law deems the contract or any clause of the contract to have been

"unconscionable at the time it was made").

*Standard Venetian Blind,* 503 Pa. at 307, 469 A.2d at 567. *See also Bishop v. Washington,* 331 Pa.Super. 387, 398–400, 480 A.2d 1088, 1093–94 (1984) (although the statute cited by the Pennsylvania Supreme Court in *Standard Venetian Blind* actually governs sales of goods, *Bishop* applied it to insurance contracts).

### C. *The D & O Policy under Pennsylvania Law*

### 1. *Ambiguity and the Issue of Contemporaneous Reimbursement of Defense Costs*

Following Pennsylvania law, our first task is to examine the language of the D & O policy and determine whether or not its provisions are ambiguous. The D & O policy here provides that the defendants "will pay, in accordance with the terms of this policy, on behalf of the Directors and Officers ... all Loss which the Directors and Officers or any of them shall become legally obligated to pay." D & O Policy, Paragraph (A). The term "Loss" is defined to include

[A]ny amount which the Directors and Officers are legally obligated to pay ... for a claim or claims made against the Directors and Officers for Wrongful Acts and shall include but not be limited to damages, judgments, settlements, costs (exclusive of salaries of officers or employees), *and defense of legal actions, claims or proceedings and appeals therefrom* ... provided however, such Loss shall not include fines or penalties imposed by law or matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

D & O Policy, Section 1(C) (emphasis added). The term "Wrongful Act" is defined as

[A]ny actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as

Directors or Officers of the Bank or individually or collectively, or any matter claimed against them solely by reason of their being Directors or Officers of the Bank.

D & O Policy, Section 1(D). The D & O policy also contains a number of exclusions. The policy excludes Losses

[B]rought about or contributed to by the dishonesty of the Directors or Officers. However ... the Directors or Officers shall be protected under the terms of this policy as to any claims upon which suit may be brought against them, by reason of any alleged dishonesty on the part of the Directors or Officers, *unless* a judgment or other final adjudication thereof adverse to the Directors or Officers shall establish that acts of active and deliberate dishonesty committed by the Directors or Officers with *actual* dishonest purpose and intent were *material* to the cause of action so adjudicated.

D & O Policy, Section 3(A)(5) (emphasis added). Finally, the D & O policy contains the following provision:

SECTION 5 COSTS, CHARGES AND EXPENSES

(A) No costs, charges and expenses shall be incurred or settlements made without the Insurer's consent which consent shall not be unreasonably withheld; however, in the event such consent is given, the Insurer shall pay, subject to the provisions of Clause 4, such costs, settlements, charges and expenses.

....

(C) The Insurer may at its option and upon request, advance on behalf of the Directors and Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

D & O Policy, Section 5.

Defendants argue that, under the terms of the D & O policy, they are not obligated to pay any of plaintiff's defense costs until there is a final adjudication that plaintiff did not have an "actual dishonest purpose and intent ... material to the cause of action so adjudicated." Defendants contend that they have the absolute discretion to withhold payment of defense costs pending final adjudication, thus forcing individual directors and officers to underwrite their entire legal defenses. In support of this position, defendants cite Section 5(C) of the D & O policy (*supra*). According to defendants, this last provision unambiguously grants them absolute discretion over the decision whether to advance defense costs to insured directors and officers.

The case law from other jurisdictions is split on the issue of whether there is an ambiguity in the language of the D & O policy. Thus we have one of those legal ironies which occasionally occur—the courts are split on whether or not certain language is ambiguous.

At one extreme, a number of courts have concluded that the D & O policy unambiguously supports the position of the defendants. In the most recent decision to reach the conclusion that the language is unambiguous, the court stated that "[i]t is clear ... upon a careful reading of the policy that the insurance company may elect, as it has chosen to do here, to wait the outcome of the underlying litigation against an insured before advancing any payment. The reason for this is also clear in that the judgment in the underlying actions may be such that there is no coverage." *Enzweiler v. Fidelity & Deposit Company of Maryland*, Civil Action No. 85–99, slip op. at 2 (E.D.Ky. May 13, 1986). The *Clandening* case, which was decided by a district court in the Ninth Circuit three years prior to *Okada v. MGIC Indemnity Corp.*, 795 F.2d 1450 (9th Cir. 1986), also summarily accepted the language of Section 5(C) at face value, and construed this point in favor of the insurer. *Clandening v. MGIC Indemnity Corp.*, CV 83–2432–LTL, Transcript of Proceedings 7–8 (C.D.Cal. May 23, 1983). *See also Bank of Commerce & Trust Co. v. National Union Fire Insurance Co. of Pitts-*

*burgh, Pa.*, 651 F.Supp. 474 (N.D.Okla. 1986) (declining to consider the question of whether the insurer should reimburse the insured officer on an "as incurred" basis until the factual basis of the insurer's obligation is established); *California Chiropractic Association v. CNA*, No. C 579 326 (Cal.Super. June 26, 1986); *Continental Casualty Co. v. Board of Education*, 302 Md. 516, 489 A.2d 536, 539 (1985); *Amrep Corp. v. American Home Assurance Co.*, 81 A.D.2d 325, 440 N.Y.S.2d 244, 246 (1981).

The Ninth Circuit Court of Appeals did find ambiguity in the D & O policy. *Okada*, 795 F.2d at 1454. The policy contained a provision identical to Section 5 of the D & O policy involved in this case. The Ninth Circuit Court found that, whereas Section 5(A) creates a duty to pay reasonable defense costs, Section 5(C) represents an "attempt to escape the duty to defend potentially covered claims, or claims whose coverage has not yet been established or conceded." *Id.* According to the court, Section 5(C) is ambiguous and may cause confusion in that it "does not specifically state which types of claims it is intended to cover." *Id.* The ambiguity created by Section 5(C) was read against the insurer under Hawaii law, which is identical to Pennsylvania law on this point. *Id.; Mohn*, 458 Pa. 576, 326 A.2d 346.

On the other side of the spectrum, the court in *PepsiCo* found that the language of the D & O policy unambiguously and explicitly obligates the insurer to pay defense costs as they are incurred. 640 F.Supp. at 659–60. The insurer there had argued, much as defendants argue in this case, that it "could not pay directors' and officers' legal fees until the conclusion of the litigation because there remained the possibility that a final adjudication would include a finding that the directors or officers had been materially dishonest" and thus not entitled to reimbursement under the terms of the policy. *Id.* at 659. The court disagreed. Since defense costs are a loss within the meaning of the policy, and since the policy obligates the insurer to pay " 'on behalf of' the directors and officers 'all losses which [they] shall become legally

obligated to pay,' " the insurer must pay defense costs of insureds as insureds become legally obligated to pay them. *Id.* at 659. Entry of final judgment is not a prerequisite to payment of defense costs. However, the insurer has a right to reimbursement in the event that the directors or officers were found to have been materially dishonest. *Id.* The only circumstance under which the insurer could refuse contemporaneous reimbursement was "if it could establish as a matter of law that there was no possible factual basis on which it might be obligated to indemnify the directors and officers." *Id.* at 660.

■ After careful consideration, we hold that the language in question is ambiguous, and that the ambiguity must be resolved in favor of the plaintiff under Pennsylvania law. There are two ambiguous parts to the D & O policy. First, we agree with the Ninth Circuit Court's finding that Section 5 contains an internal ambiguity. Subsection 5(C) creates confusion by seeming to absolve the insurer from its duty to pay reasonable defense costs contained in Subsection 5(A). *See Okada*, 795 F.2d at 1453–54.

Another ambiguity is apparent when Section 3(A)(5) is read in conjunction with Section 5. In Section 3(A)(5), the defendants agreed to protect plaintiff against "any claims" grounded in "any alleged dishonesty," unless there is a final adjudication that "active and deliberate dishonesty committed by the Directors or Officers with actual dishonest purpose and intent were material to the cause of action so adjudicated." This clause must be interpreted to require immediate reimbursement of defense costs as they become due. *See PepsiCo*, 640 F.Supp. at 659. Concurrently, Section 5(C) purports to leave the timing of defense payments to the discretion of the insurer. These provisions, when read together, create uncertainty as to the timing of reimbursement. This causes the same sort of dilemma which gave rise to the old saying: "The large print giveth and the small print taketh away."

These ambiguities are apparent on the face of the policy. The split of authority on this issue confirms our findings; the fact that other courts have analyzed this same language and reached widely divergent conclusions is certainly some indication that the language in question is less than crystal clear. *Compare PepsiCo,* 640 F.Supp. at 659–60, *with Enzweiler,* slip op. 85–99 at 2. We find, with all due respect, that the analysis of the court in *PepsiCo,* for example, is much more persuasive than the conclusion reached by the court in *Enzweiler.* In the *PepsiCo* case, the court held that the insurer was obligated to make contemporaneous payment of the defense costs of insured directors and officers, despite the fact that the directors and officers were alleged to have committed fraudulent acts. 640 F.Supp. at 658. As the court stated, the insurer "was obligated to pay incurred defense costs unless a final judgment found 'material dishonesty' by the directors or officers." *Id.* *PepsiCo* acknowledged that the *insurer* is entitled to reimbursement from the *insured* in the event that the insured is found to have been intentionally dishonest. *Id.* at 659.

Defendants have advanced the argument that the court should examine the expectations of the parties to resolve any ambiguity in the policy. Defendants' Brief at 24 (citing *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir.1985); *Northbrook Insurance Co. v. Kuljian Corp.,* 690 F.2d 368, 371–73 (3d Cir.1982)). Plaintiff replies that the Third Circuit Court of Appeals has suggested that extrinsic evidence should not be used to interpret insurance contracts. Plaintiff's Reply Brief at 12 (citing *Daburlos v. Commercial Insurance Co. of Newark,* 521 F.2d 18 (3d Cir.1975)). The extrinsic evidence in this case indicates that the UNB employees who purchased the D & O policy probably did not contemplate this issue. *See* Plaintiff's Reply Brief at 18. Certainly, the average director or officer who knows that he is a beneficiary of a D & O policy, is unlikely to anticipate that he may be forced to underwrite his entire defense costs, and it is perhaps more unlikely that he would expect to be defend-

ing himself from his own employer. However, we have not relied upon extrinsic evidence in reaching our conclusions because Pennsylvania law provides a clear rule of construction.

Under Pennsylvania law, ambiguities must be resolved against the insurer, who drafted the D & O policy, and in favor of the insured. *See Mohn,* 458 Pa. 576, 326 A.2d 346; *United Services Automobile Ass'n v. Elitzky,* —— Pa.Super. ——, 517 A.2d 982 (1986); *Pacific Indemnity,* 766 F.2d at 760–61. Therefore, we find that defendants are obligated to pay plaintiff's defense costs as those costs become due. Defendants may be entitled to reimbursement from plaintiff if there is a final adjudication of active and deliberate dishonesty on the part of plaintiff.

This brings us to another of defendants' arguments. Defendants contend that they are justified in withholding payment because virtually all the allegations in the underlying suits against plaintiff involve some form of active and deliberate dishonesty, which is excluded from coverage by the D & O policy. We do not find this argument convincing.

It is axiomatic that insurance coverage is determined by the allegations made in the complaint. *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 58, 188 A.2d 320, 321–22 (1963); *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985); *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Insurance,* 467 F.Supp. 17, 19 (E.D.Pa.1979) ("[t]he insurer is not required to defend the claim when it is apparent from the face of the complaint that none of the injuries that are alleged fall within the coverage of the policy"). If a claim falls outside the scope of the policy because of an exclusion in the policy, it is the insurer's burden to demonstrate that the exclusion applies. *Daburlos v. Commercial Insurance Co. of Newark,* 521 F.Supp. 18, 24–25 (3d Cir.1975). *But see Standard Venetian Blind,* 503 Pa. at 306–307, 469 A.2d at 566–67 (insurer need not prove that the insured was aware of the exclusion). An insurer is not excused from its

duty to defend until it becomes apparent that there are no circumstances under which the insurer would be responsible. *Pacific Indemnity*, 766 F.2d at 763. Also, the usual course of civil litigation in the federal courts must be taken into account. *See Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484, 488–89 (1959) (distinguishing *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304 (1954)). In *Cadwallader,* the Pennsylvania Supreme Court held that the insured was entitled to defense costs because the complaint stated an alternative ground for relief which would have allowed recovery, and then went on to say:

> The second reason given by the able opinion of the trial court for [ordering the insurer to defend]; i.e. that a claim based on negligence [could] be ultimately sustained under the complaint, despite the allegations of conspiracy and fraud, because of the liberality of pleading under the Federal Rules of Civil Procedure *also has merit.*

*Id.* at 489 (emphasis added).

The *Davis* case is an excellent illustration of the legal rule. 467 F.Supp. 17. There, the insurer withheld defense costs on the grounds that the insured, a contractor, "expected" the damage caused by construction, and thus was excluded from coverage by the policy. *Id.* at 19–20. The court disagreed, holding that "if coverage (indemnification) depends upon the existence or non-existence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage." *Id.* at 19. The instant case is strikingly similar. Defendants are withholding defense costs on the grounds that plaintiff was actively and deliberately dishonest. However, this is a factual issue which is as yet unresolved. Defendants are not excused from payment of defense costs on this basis.

*Warner v. Employers' Liability Assurance Corp.*, 390 Pa. 62, 133 A.2d 231, 233 (1957), cited by defendants, is a case in which a claim clearly fell outside the scope of an insurance policy. The insurance policy in *Warner* contained an explicit exclusion for injury to property in the care, custody or control of the insured. *Id.* at 64, 133 A.2d at 232. Since the lawsuit against the insured was for recovery of stored property under the insured's care, custody and control, and not belonging to the insured, there was no remote possibility that the insurer would ever be liable for the loss. *Id.* at 66–67, 133 A.2d at 233. The facts are not so clear in this case. *See also Vale Chemical Co. v. Hartford Accident & Indemnity*, 340 Pa.Super. 510, 490 A.2d 896 (1985) (insurer required to defend action potentially within the scope of coverage of products liability policy); *Techalloy Co., Inc. v. Reliance Ins. Co.*, 338 Pa.Super. 1, 487 A.2d 820 (1984) (no duty to defend where allegations in the complaint *and* facts in the record establish that action could not possibly fall within scope of coverage).

On the underlying facts of this case, alternative allegations of negligence could have been readily made. *See generally* Deposition of Plaintiff James P. Little. In fact, the last case of the series did include an alternative allegation of negligence. Civil Action No. 85–2342, Complaint, Count VII. The course of civil litigation is such that, despite the allegations which have been made, a final adjudication could plausibly find that plaintiff was either blameless or simply negligent. As we have already pointed out, the policy requires reimbursement of reasonable defense costs *unless* a final adjudication establishes actual and deliberate dishonesty, with actual dishonest purpose and intent.

The underlying facts in this case are disputed, and Mr. Little's intent is far from clear. Defendants are not excused from their duty of contemporaneous reimbursement simply because the plaintiffs in the underlying lawsuits did not choose to include alternative allegations of negligence. The underlying facts in *PepsiCo* supported alleged violations of Section 10 of the 1934 Securities Act and claims for fraud. *See* 640 F.Supp. at 658. There, plaintiffs had also been charged in the alternative with reckless and negligent misrepresentation.

*Id.* The court held that the insurers were responsible to pay the insureds' defense costs as incurred, without analyzing which of the allegations supported this holding. We find that defendants here must contemporaneously reimburse plaintiff's defense costs, just as in *PepsiCo.* Defendants cannot escape responsibility because plaintiffs in the underlying suits chose, for reasons of their own, not to allege negligence as an alternative to intentional dishonesty.

Even if plaintiff is finally adjudged liable of something more than simple negligence, the exclusion might not apply because the exclusion itself is vague and ambiguous. *See* Bisceglia, *Practical Aspects of Directors' and Officers' Liability Insurance—Allocating and Advancing Legal Fees and the Duty to Defend,* 32 UCLA L.Rev. 690, 701 (1985) ("How bad does conduct have to be to qualify as actively and deliberately dishonest? ... Where does active and deliberate dishonesty fit in the negligence—gross negligence—recklessness-intentional wrongdoing continuum?"); J. Bishop, *The Law of Corporate Officers and Directors* ¶ 8.03[2][a] (1981) ("There are no decisions of the courts construing 'active and deliberate dishonesty' and 'actual dishonest purpose and intent' as those terms are used in D & O policies."). The exclusion is not framed in precise legal terms. Rather, it bars coverage for "acts of active and deliberate dishonesty committed by the Directors or Officers with actual dishonest purpose and intent." D & O Policy, Section 3(A)(5). Since the exclusion is so vague, it must be construed in favor of the insured, and read narrowly. *See Pacific Indemnity,* 766 F.2d at 763. The exclusion cannot be interpreted to allow the insurer to withhold defense costs whenever allegations of intentional misconduct are involved.

Defendants have not demonstrated that the exclusion conclusively applies. If a final adjudication finds that plaintiff was not actively and deliberately dishonest within the meaning of the exclusion, then plaintiff's defense costs are no doubt a loss encompassed by the D & O policy. Since there is a distinct possibility that defendants might ultimately be liable, defendants cannot be excused from their duty to reimburse plaintiff's defense costs at this time. *See Pacific Indemnity,* 766 F.2d at 763.

### 2. *Unconscionability and the Issue of Contemporaneous Reimbursement of Defense Costs*

Even if the D & O policy did grant defendants absolute discretion over the timing of reimbursement of defense costs, that provision would be unconscionable under Pennsylvania law. *See Standard Venetian Blind,* 503 Pa. at 307, 469 A.2d at 567; *Bishop,* 331 Pa.Super. at 398–400, 480 A.2d at 1093–94. The Pennsylvania Supreme Court has defined unconscionability as "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222, 1228 (1981) (quoting *Williams v. Walker-Thomas Furniture Co.,* 350 F.2d 445, 449 (D.C.Cir.1965)). If Section 5(C) of the D & O policy does actually grant the insurer an absolute option to withhold defense costs until a final adjudication, then it leaves the insured no meaningful choice in the matter. The insured is compelled to defend himself; he has no real alternative even though the cost of defense may bankrupt him.

As for the second part of the standard, if Section 5(C) grants the insurer an absolute option to withhold defense costs from directors and officers, then it is unreasonably favorable to the insurer. Directors and officers would be forced to advance all their defense expenditures, which are likely to be staggering. Meanwhile, the insurer defers all payment until the final disposition of suit, which may take years. This situation is unreasonably favorable to the insurers, who may blithely disclaim responsibility for the insured's enormous financial burdens while the insured must fight on.

Defendants have proposed that the nature of the allegations against plaintiff justify withholding of defense costs. If the D & O policy did allow absolute discretion to the insurer to withhold payment whenever charges of intentional dishonesty are leveled against directors and officers, as

defendants claim, then insurers would be able to withhold payment in virtually every case. That would be a most unsatisfactory result. It would leave directors and officers in an extremely vulnerable position. Any allegations of intentional dishonesty, no matter how groundless, could bring financial ruin upon a director or officer.

■ Defendants have argued strenuously that UNB "bargained for" the terms of the D & O policy, and that the price paid for the policy was commensurate with the interpretation advanced by defendants. Defendants maintain that purchasers of D & O insurance are more sophisticated than the average consumer and thus do not require the protection that an ordinary consumer might. A reading of the depositions of the UNB employees responsible for purchasing the policy actually supports plaintiff's contention that UNB was no more sophisticated than the average consumer. As plaintiff notes in his reply brief, the agent who sold the D & O policy to UNB agreed with the persons who represented UNB that "the advancement of legal fees was never specifically discussed during contract negotiations." Plaintiff's Reply Brief at 18. While the courts have been cautioned against indiscriminate use of the doctrine of unconscionability to favor one commercial party over another, *Stanley A. Klopp, Inc. v. John Deere Co.*, 510 F.Supp. 807 (E.D.Pa.1981), *aff'd*, 676 F.2d 688 (3d Cir.1982), we find that the doctrine is entirely appropriate in this case. The beneficiaries of D & O insurance have no more leverage than the ordinary person who deals with insurance companies.

D. *Regulations Issued by the Comptroller Permit Contemporaneous Reimbursement*

■ Defendants have argued that regulations issued by the Comptroller of the Currency, governing indemnification of bank directors and officers, prohibit the advancement of funds to defend allegations of intentional misconduct; we must disagree. The regulation cited by defendants states that "in order to preserve incentives for sound banking principles neither the bank's articles of association, bylaws,

shareholder resolutions nor insurance shall provide for the indemnification of bank personnel who are *adjudged* guilty of or liable for willful misconduct, gross neglect of duty, or criminal acts." 12 C.F.R. § 7.5217 (emphasis added). The key word in the regulation is "adjudged." The regulation does not attempt to deny defense costs because of mere allegations against bank directors and officers. As the *PepsiCo* opinion noted, the insurer who advances defense costs is entitled to reimbursement from the insured if there is an ultimate finding of active and deliberate dishonesty, which fully satisfies the regulatory requirements. *PepsiCo*, 640 F.Supp. at 659. We note that the regulation has since been changed to permit indemnification as permitted by the applicable state law.

E. *The Issue of Bad Faith*

■ Plaintiff has alleged that defendants acted in bad faith in refusing to advance defense costs. Therefore, plaintiff has asked this court to order defendants to pay the costs which plaintiff has incurred during the course of this suit for declaratory judgment, along with any costs associated with a potential appeal to the Third Circuit Court of Appeals, if such appeal is unsuccessful. *Pacific Indemnity Co. v. Linn*, 766 F.2d 754 (3d Cir.1985); *Kelmo v. Commercial Union Insurance Co.*, 285 Pa.Super. 13, 426 A.2d 680 (1981). We do not find that defendants have acted in bad faith, and therefore deny this requested relief.

### III. CONCLUSION

In summary, we hold that, under the terms of the D & O policy as interpreted under well-established principles of Pennsylvania law, defendants are obligated to reimburse plaintiff for plaintiff's defense costs in the underlying suits as those costs are incurred. Because defendants have not acted in bad faith, defendants are not obligated to pay plaintiff's costs in this suit.

An appropriate order will be entered.

### ORDER

AND NOW, to-wit, this 23rd day of December, 1986, for the reasons stated in the

foregoing opinion, it is hereby ORDERED, ADJUDGED and DECREED that, upon receipt of a duly attested bill of costs, expenses and attorneys fees from plaintiff, defendants MGIC Indemnity Corp. and American Casualty Co. be and hereby are directed to reimburse plaintiff James P. Little for said costs, expenses and attorneys fees in the following cases:

1. *ITT Commercial Finance Corp. v. Union National Bank of Pittsburgh,* Civil Action No. 83–2512,

2. *First National Bank of Boston v. Union National Bank of Pittsburgh,* Civil Action No. 83–2684,

3. *Bankers Guarantee Title & Trust Co. v. Union National Bank of Pittsburgh,* Civil Action No. 83–2780,

4. *Bank of Tokyo Trust Co. v. Union National Bank of Pittsburgh,* Civil Action No. 83–2893, and

5. *First National Bank of Boston v. Union National Bank of Pittsburgh,* Civil Action No. 85–2342,

and shall continue to pay any future costs, expenses and attorneys fees, subject to the monetary limits set forth in Section 4 of the Directors and Officers insurance policy, until otherwise ordered.